617 A.2d 1040

**MAYOR AND CITY COUNCIL OF BALTIMORE and Edward V. Woods**

v.

**MARYLAND COMMITTEE AGAINST THE GUN BAN.**

No. 27, Sept. Term, 1992.

Court of Appeals of Maryland.

Jan. 13, 1993.

Motion for Reconsideration Denied
March 11, 1993.

**80**

William R. Phelan, Jr. (Neal M. Janey, City Sol., Ambrose T. Hartman, Deputy City Sol., Frank C. Derr, on brief), Baltimore, for petitioner.

Howard J. Fezell, Frederick, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

In this case inspection of public records is sought under the Maryland Public Information Act (the Act), Maryland Code (1984, 1992 Cum.Supp.), §§ 10–611 through 10–628 of the State Government Article.[1] The records were generated in the course of an investigation, conducted by the Internal Investigation Division (IID) of the police department in Baltimore City, that resulted from one or more civilian complaints about the conduct of police officers during the service of a subpoena duces tecum. Following the police department's refusal to disclose, a circuit court held that the records, as intra-agency memoranda and as records of an investigation by a police department, were exempt from disclosure. The Court of Special Appeals concluded that neither exemption applied. *Maryland Comm. Against the Gun Ban v. Mayor & City Council of Baltimore*, 91 Md.App. 251, 603 A.2d 1364 (1992). We granted cross-petitions for certiorari, and, as explained below, we shall hold that disclosure was permissibly denied under provisions of the Act relating to records of investigations conducted by a police department.

**I**

The Act declares that "[a]ll persons are entitled to have access to information about the affairs of government and

---

1. Unless otherwise indicated all statutory references are to Md. Code (1984, 1992 Cum.Supp.), State Government Article.

the official acts of public officials and employees." § 10–612(a). "To carry out the [foregoing right], unless an unwarranted invasion of the privacy of a person in interest would result, [the Act is to] be construed in favor of permitting inspection of a public record." § 10–612(b). A " '[p]ublic record' means ... any documentary material" that is made or received "by a unit or instrumentality of the State government or of a political subdivision ... in connection with the transaction of public business." § 10–611(f)(1)(i); *see* Maryland Attorney General, Public Information Act Manual 4 (1987). The IID records at issue in this matter are public records as defined in the Act. At issue is whether those records fall within any exclusion from the general rule of disclosure.

■ Section 10–616 requires custodians to deny inspection of specific types of public records. Those include records relating to adoption, welfare, retirement, hospital, student, and personnel records. Section 10–617 requires custodians to deny inspection of a part of a public record that contains specified information, including certain medical, psychological, sociological, commercial and financial information. Section 10–618 permits custodians to deny inspection to a third category of records. The petitions for certiorari in this case present questions concerning two types of records in this third category, namely, intra-agency memoranda (§ 10–618(b)) and records of police department investigations (§ 10–618(f)). There is no need in this case to focus on subsection (b), however, because the provisions relating to records of police department investigations are dispositive. Section 10–618(a) and (f) provide:

"(a) *In general.*—Unless otherwise provided by law, if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest, the custodian may deny inspection by the applicant of that part, as provided in this section.

. . . .

(f) *Investigations.*—(1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:

(i) records of investigations conducted by the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff;

(ii) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or

(iii) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a local correctional facility, or a sheriff.

(2) A custodian may deny inspection by a person in interest only to the extent that the inspection would:

(i) interfere with a valid and proper law enforcement proceeding;

(ii) deprive another person of a right to a fair trial or an impartial adjudication;

(iii) constitute an unwarranted invasion of personal privacy;

(iv) disclose the identity of a confidential source;

(v) disclose an investigative technique or procedure;

(vi) prejudice an investigation; or

(vii) endanger the life or physical safety of an individual."

Section 10–618(f)(2) permits denial of inspection "by a person in interest," but "only to the extent that the inspection would" produce one of the seven results enumerated in paragraph (f)(2). Under the Act, "[p]erson in interest" is a definitional term that means, in the context presented here, "a person ... that is the subject of a public record or a designee of the person." § 10–611(e)(1). If the person seeking to inspect the record of a police department investigation is not "a person in interest," then the rule of § 10–618(f)(1) applies. Under (f)(1), the custodian may deny inspection. But (f)(1) must be read in conjunction with the general condition to § 10–618—"if [the] custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest." § 10–618(a); *see*

*Cranford v. Montgomery County*, 300 Md. 759, 771–72, 481 A.2d 221, 227 (1984). Thus, if the person seeking inspection of the records of a police department investigation is not a person in interest, and if the custodian believes that disclosure of the records of the police investigation is not in the public interest, the Act does not require disclosure.[2]

## II

The sole plaintiff in the action before us is Maryland Committee Against the Gun Ban (the Committee). It is a "political committee" under the Election Code, meaning "any combination of two or more persons appointed by a candidate or any other person or formed in any other manner which assists or attempts to assist in any manner the promotion of the success or defeat of any candidate, candidates, political party, principle or proposition submitted to a vote at any election." Md. Code (1957, 1990 Repl. Vol., 1992 Cum.Supp.), Art. 33, § 1–1(a)(14). Every political committee must appoint and constantly maintain a chairperson and a treasurer. *Id.* § 26–4(a). The treasurer of a political committee has obligations imposed by the Fair Election Practices Act relating to recordkeeping and reporting of receipts and disbursements of the political committee. *Id.* subtitle 26.

Chapter 533 of the Acts of 1988 prohibited distribution in Maryland of guns that were determined, by a newly created agency, to meet certain criteria. Chapter 533 had been petitioned to referendum at the general election of November 1988. At the time relevant to this case, the Committee was seeking the defeat of Chapter 533 on referendum.

---

**2.** The Act also contemplates that disclosure may be "otherwise provided by law." § 10–618(a). There is no contention in the instant action that any statute, other than the Act, requires that the records be disclosed. Accordingly, if the Act does not require inspection, then the common law rule applies under which "it is generally held that police records are confidential." *Whittle v. Munshower,* 221 Md. 258, 261, 155 A.2d 670, 672 (1959).

The Baltimore City political headquarters of the Committee was in the offices of Vanguard Communications Company at 2506 North Calvert Street. On the evening before the general election, officers of the Baltimore City Police Department came to that address to serve a subpoena duces tecum for Committee records. The evidence does not reveal precisely what the alleged misconduct of any police officer might have been.[3] The Director of the IID, Major Kenneth L. Blackwell (Blackwell), testified that accusations were made against two members of the Baltimore City Police Department that "encompassed excessive force, discourtesy and ... misconduct" at the Committee's headquarters on election eve. These accusations precipitated an IID investigation, the records of which are the subject of the request under the Act that is now before us.

IID investigations are conducted pursuant to General Order 48–77 of 1 July 1977, issued by the Baltimore City Police Commissioner. That order recites that the policy of the agency is "to accept and investigate complaints against its members of alleged misconduct and based upon its findings to exonerate the innocent, establish the guilt of wrongdoers and justly determine disciplinary action with promptness." IID investigations are considered confidential by the Department. Paragraph VII of the order explains:

"Mistaken or even deliberately false reports and accusations are made against members of the department. In some instances, the most conscientious and hardworking members will be the subject of such reports. Accordingly, in order to insure the integrity of the police department it is necessary to investigate completely and thoroughly *all* reports and accusations from all sources. This must be done. At the same time, the reputations and good names of innocent members must be protected.

---

**3.** Conduct of police officers is described in witnesses' statements that were marked for identification, but not admitted into evidence. No issue was presented by the Committee on appeal that the statements of these witnesses should have been admitted into evidence.

This is important in the interest of fairness, and thus, to the effectiveness of police operations. In view of the aforementioned, investigations are considered confidential and therein so handled."

In the Baltimore City Police Department, an IID investigation report consists of descriptions of all steps in the investigation, all statements taken, a summary and conclusion, and comments by persons in the chain of command. The investigation is subjected to a series of reviews to determine that the investigation is complete and to obtain recommendations as to disposition. Investigations of law enforcement officers are subject to the Law Enforcement Officers' Bill of Rights (LEOBR), Md. Code (1957, 1992 Repl. Vol.), Art. 27, §§ 727 through 734D.

Under General Order 48–77, annex A, ¶ III.H, the investigator, upon completion of the investigation, classifies the complaint as "sustained," "not sustained," "exonerated," or "unfounded." These classifications respectively mean that the allegation is supported by sufficient evidence, that there is insufficient evidence either to prove or disprove the allegation, that the incident complained about occurred but was lawful and proper, and that the allegation is false or not factual. In the instant matter it appears that the highest command level at which the investigation report was reviewed was that of the Deputy Commissioner of the Administrative Bureau. That superior officer concurred in the recommended conclusion that the allegations were not sustained. Cases in which the allegations are not sustained "will be regarded as confidential and the records of such cases will be retained only in the files of the Internal Investigation Division and are not a matter of public information." General Order 48–77, annex A, ¶ III.H.

Further, because the instant matter involved allegations of excessive force and of discourtesy, the IID report also was reviewed by the Complaint Evaluation Board which would have submitted its findings and recommendations to the Police Commissioner's office. The Complaint Evalua-

tion Board was created by Chapter 889 of the Acts of 1975, which is codified as Code of Public Local Laws of Baltimore City (1979), §§ 16–41 through 16–50 (Local Code). The board is composed of the State's Attorney of Baltimore City, the Attorney General of Maryland, the City Solicitor of Baltimore City, the Police Commissioner of Baltimore City, the Executive Director of the Legal Aid Bureau, Inc., the Executive Director of the Maryland Human Relations Commission, and the Executive Director of the Baltimore City Community Relations Commission, or their delegates. Local Code § 16–48 provides that "[r]ecords containing the names or identification of police personnel, complainants, investigators and witnesses may not be disclosed or released to the general public."

In the instant IID investigation the Deputy Commissioner's conclusion of "not sustained" was reached by April 1989. In a letter of May 31, 1990, the Committee, through counsel, requested permission to inspect and obtain copies of the IID report. No individual person joined with the Committee in that request. Major Blackwell, the custodian, by letter of July 3, 1990, denied inspection of the requested records relying, *inter alia*, on § 10–618(f).[4]

The Committee filed the instant action seeking judicial review in the Circuit Court for Anne Arundel County. *See* § 10–623. No individual joined the Committee as a complainant in this action. One of the defendants is Edward V. Woods, Police Commissioner of Baltimore City, the ultimate custodian of the requested public records. His joinder is

---

4. Counsel who made the May 31, 1990, request for the Committee later wrote to the Baltimore City Police Department requesting copies of the statements given to the IID investigators by specifically identified civilians. The custodian interpreted these requests to be requests made by the witnesses through their agent. The statements were furnished. The trial court did not think that those disclosures had any significance to the decision in this case; nor do we. The disclosures apparently rested on an implicit determination by the custodian that no public interest purpose would be served by withholding from those witnesses their respective statements.

sufficient to make this action justiciable.[5]

At trial Major Blackwell was the principal witness for both sides. Using the seven circumstances enumerated in § 10–618(f)(2) as a checklist, counsel for the Committee developed facts which the Court of Special Appeals summarized as follows:

"This investigation had been concluded without further action at least a year before the request for access to the report was made, and so there was no investigation to be prejudiced by disclosure ((f)(2)(vi)). The department, through counsel, conceded at Major Blackwell's deposition that there was no law enforcement proceeding with which disclosure could interfere ((f)(2)(i)). The department also stipulated that, to its knowledge, there was no impending trial or adjudication which disclosure could prejudice ((f)(2)(ii)) and that disclosure would not cause danger to or imperil the life or safety of any individual ((f)(2)(vii))."

*Maryland Committee*, 91 Md.App. at 264, 603 A.2d at 1370–71.

The Committee also introduced the following portion of Major Blackwell's deposition:

"[Q.] [C]ould you tell me how the disclosure of any of those records to the Plaintiff would disclose the identity of a confidential source?

"[A.] Because there are no anonymous sources in this particular investigation, I can't honestly see where it would have a negative impact on anybody involved."

---

5. Whether the Mayor and City Council of Baltimore, a municipal corporation, is a proper party to this action, and whether the State of Maryland, which was joined by amendment of the complaint and later dismissed by the circuit court, would be a proper party, were issues addressed by the circuit court, but they are not included in the petitions for certiorari. *Cf. Clea v. Mayor & City Council of Baltimore*, 312 Md. 662, 668–70, 541 A.2d 1303, 1306–07 (1988) (holding Police Department of Baltimore City to be a state agency for purposes of respondeat superior liability).

In open court Major Blackwell explained that "there is pretty much a big concern with individuals coming forward to share what information that they have," both within and without the police department. He said that IID investigators "certainly aren't revered by the members [of the Department] that [the IID investigators] have to deal with." Likewise, civilians "are very reluctant to share what information [they have] for fear of reprisal, of what sort I can't specify, but they do voice concern with sharing information and having their personal information ... being disseminated."

After the testimony was concluded, the circuit court reviewed in camera the IID report. In a written opinion denying inspection the circuit court found that

"[i]n order to conduct such an investigation, confidentiality of any person who cooperates with the investigation must be assured. If confidentiality were not maintained, witnesses or other persons with information would be hesitant to cooperate because of a fear of retribution or possible wrongdoing by the officer being investigated. If all I[I]D investigations were released to the public, it would be extremely difficult to discipline or remove officers who were acting improperly. Clearly it is in the public interest to discipline police officers who act contrary to departmental regulations. Therefore, the court finds the disclosure of the documents would be contrary to public interest."

A final judgment was entered.

The Committee appealed to the Court of Special Appeals. The Committee, however, did not have sealed and transmitted as part of the record on appeal the IID report that was examined in camera by the trial judge. The judge apparently caused the report to be returned to Major Blackwell.

The Court of Special Appeals reversed. It held that the Committee was a person in interest. 91 Md.App. at 264, 603 A.2d at 1370. Consequently, that court analyzed the Act's exclusion of reports of police department investiga-

tions in terms of the seven circumstances enumerated in § 10–618(f)(2), which comprise the only justifications for withholding a police investigation report from a person in interest. Referring to paragraph (f)(2)(iv), the court said that "Major Blackwell conceded that no anonymous sources were used in the investigation, and so disclosure would not reveal the identity of a confidential source." *Id.* at 264–65, 603 A.2d at 1371.

When the mandate of the Court of Special Appeals was issued, the Committee obtained an order from the circuit court directing production of the subject report. In conjunction with our grant of certiorari, this Court stayed the circuit court's order.

At oral argument in this Court, counsel for the Committee advised us of additional facts that occurred after the trial court record closed. On November 1, 1991, certain individuals who were on the premises of the Committee's headquarters on the evening of November 7, 1988, filed a complaint in the United States District Court for the District of Maryland alleging that certain police officers violated Title 28, U.S.C. § 1983. At least some of the plaintiffs in the federal action are represented by the same attorney who is counsel for the Committee in the action before us. During pretrial discovery in the federal action the court ordered production of the IID report, subject to a protective order limiting use of the report to the federal court action and otherwise prohibiting its dissemination. Counsel for the Committee frankly acknowledges to us that the action before us continues because he "would like to obtain [the report] for use on behalf of the Committee without any restrictions as to that use."

The Committee also acknowledged in oral argument in this Court that the Committee, as distinguished from individual persons, did not file any complaint with the Baltimore City Police Department concerning the conduct of any officers on the evening of November 7, 1988.

III

■ The Committee is not a person in interest in the context of § 10–618(f)(2). We shall assume, arguendo, that a political committee under the Election Code is a "person" as that term is used in the State Government Article. § 1–101(d).[6] The Committee, however, is not a person "in interest," because it is not "the subject of" the IID report. § 10–611(e). The two police officers on whom the investigation of accusations of misconduct focused clearly were subjects of the IID report.

The Court of Special Appeals reasoned that under the Act there could "be more than one category of 'subject' or 'interested person.'" 91 Md.App. at 263, 603 A.2d at 1370. That court said that, under the General Order of the Police Commissioner, IID investigations "are usually triggered by a complaint that someone makes about the conduct of an officer or employee; that, it appears, was the case here." *Id.* As we have seen from the admission by the Committee at argument in this Court, the Committee, as such, did not complain. Accordingly, we need not opine on whether such a complainant, in addition to the officers, may be a "person in interest" under § 10–618(f)(2).

The Court of Special Appeals also found it "evident, then, that the conduct of the police was, to some extent at least, a response to the conduct and statements of [the Committee] and its employees." *Id.* at 264, 603 A.2d at 1370. We shall not dwell on whether there is evidence to support that finding. This is because we do not agree with the intermediate appellate court's conclusion that "[i]n that circumstance, we would be hard pressed to conclude that [the Committee], through its employees, was not also 'the subject' of the investigation and the report." *Id.* "Person in interest" under the Act is more narrowly focused.

---

**6.** Section 1–101(d) reads:
"'Person' means an individual, receiver, trustee, guardian, personal representative, fiduciary, or representative of any kind and any partnership, firm, association, corporation, or other entity."

For example, under the Act, "a custodian shall deny inspection of a retirement record for an individual." § 10–616(g)(1). There are three exceptions to that rule. Under § 10–616(g)(2), "[a] custodian shall permit inspection ... by the person in interest," by the appointing authority, and, after the death of the individual, by certain claimants to the retirement benefits. Clearly the "subject" of the retirement records is the present or prospective retiree. Even though the employing, governmental entity has an interest in the records, that entity is not the "subject" of the records. Consequently, express provision for inspection by the appointing authority is needed to go beyond the definitional phrase, "person in interest." *See* § 10–616(g)(2)(ii). Similarly, personnel records under § 10–616(i) are not to be disclosed, but inspection is permitted by "(i) the person in interest; or (ii) an elected or appointed official who supervises the work of the individual." § 10–616(i)(2). Of like effect is the treatment of student records. The custodian "shall deny inspection" of certain student records, § 10–616(k)(1), but the "custodian shall permit inspection by ... the person in interest," *i.e.*, the student, or by the student's supervisor, § 10–616(k)(2).

The fact that individual persons who were working toward the goal of the Committee, either as volunteers, paid employees, or independent contractors, interfaced with the police officers who thereby became subjects of the investigation is insufficient to make the Committee a "person in interest." That conclusion is forcefully illustrated by 71 Op. Att'y Gen. 297 (1986). The question presented was whether the tape recording of a hearing for the involuntary admission of a patient to a mental health facility could be disclosed to a hospital whose professional staff had participated at the hearing. The Attorney General recognized that the record could be useful in the facility's treatment of the patient. The Act, however, in § 10–617(b), mandates denial of inspection of records containing medical or psychological information, but permits "the person in interest to inspect the public record to the extent permitted under" a

provision of the Health–General Article. The Attorney General concluded that "only the patient (or, as appropriate, the patient's representative), and no one else, is to be regarded as the 'person in interest' of a public record that contains medical and psychological information about that patient." 71 Op. Att'y Gen. at 302. Inspection must be denied even at the request of one, other than the patient, who had participated in the hearing. *Id.* at 303.

The Act's history covering reports of police investigations also makes clear that the "person in interest" referred to in § 10–618(f)(2) is the person who is investigated. As originally enacted by Chapter 698 of the Acts of 1970, the Act became codified in Md. Code (1957, 1975 Repl.Vol.), Art. 76A. Section 3(b)(i) of former Art. 76A addressed records of investigations conducted by a police department, but it did not contain any special provisions concerning inspection by a person in interest. "Person in interest" was, however, a definitional term in the original Act, Md. Code (1957, 1975 Repl.Vol.), Art. 76A, § 1(h), that was employed in other exceptions to the general rule of disclosure. What is today paragraph (2) of § 10–618(f) came into the Act by Chapter 1006 of the Acts of 1978.

During 1974, metropolitan Baltimore daily newspapers published articles describing surveillance activities and the maintenance of dossiers by the Baltimore City Police Department concerning persons who were politically active in the community. In January of the 1975 General Assembly session, the late Senator Verda Welcome of Baltimore City obtained adoption of Senate Resolution No. 1, calling for a legislative investigation into intelligence surveillance by police throughout the State. The Senate Constitutional and Public Law Committee (the Senate Committee) was designated to investigate. It reported December 31, 1975. *See Report to the Senate of Maryland, Senate Investigating Committee Established Pursuant to Senate Resolutions 1 and 151 of the 1975 Maryland General Assembly* (1975) (the Senate Committee Report).

The Senate Committee found, *inter alia,* that

"the privacy of citizens is directly affected by the collection, maintenance, use and dissemination of personal information especially when one considers that information gathered by intelligence agencies as well as other governmental departments is widely disseminated to local, state and federal agencies. The opportunity for an individual to secure employment ... may well be endangered by the dissemination of improper or erroneous personal information."

Senate Committee Report at 73. Concluding that it was "an impossible task to define areas of legitimate police concern for surveillance and information-gathering practices without adversely affecting proper law enforcement activities," the Senate Committee "deemed it both necessary and preferable to provide for some type of outside vigilance wherein citizens are afforded the right to view those materials in the possession of law enforcement agencies *respecting them personally.*" *Id.* (emphasis added). As a result, the Senate Committee recommended, *inter alia,* that the then Act be amended to provide "that a 'person [in] interest' as defined in the statute may be denied the right to inspect records referred to in subsection (b)(i) thereof only to the extent that the production of such records would hamper or jeopardize valid law enforcement activities as particularly defined." *Id.* at 74.

That recommendation was incorporated into Chapter 1006 of the Acts of 1978. It added to former Art. 76A, § 3(b)(i), the proviso that "the right of a person in interest to inspect the records may be denied only to the extent that the production of them would" generate one of the circumstances currently enumerated in subparagraphs (i) through (vii) of § 10–618(f)(2). *See* Acts 1978, ch. 1006. Consequently, there was no legislative purpose in the addition of present paragraph (2) of § 10–618(f) to enlarge the class of those who could exercise the right of inspection beyond those who were the subjects of the particular police investigation.

The administrative interpretation of the Act by the Maryland State Police concerning records of investigations conducted by its Internal Affairs Unit is also consistent with the interpretation of § 10–618(f) which we have set forth above. Distinction is made between *"Access Rights of the Person in Interest"* and *"Disclosure of Records to Third Parties."* *See Final Report, Governor's Information Practices Commission* 308 (1982). As to the former, "the accused officer has access to virtually all of the Internal Affairs Records pertaining to him as a consequence of the [LEOBR]," while as to the latter, "Internal Affairs Records are not released to third parties without the consent of the officer in question." *Id.*

Here, the Committee is not the object of a surveillance or the subject of the investigation. Section 10–618(f)(2) is inapplicable.

## IV

■ Under the applicable provision of the Act, § 10–618(f)(1), the rule is that "a custodian may deny inspection of ... records of investigations conducted by ... a police department." Denial is permissible "if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest." § 10–618(a). Because the Committee is not a person in interest, its request to inspect must be viewed as if it were made by the press or by any citizen. Indeed, the admitted motive of the Committee is simply to disseminate the report. The custodian in this case, however, believed that inspection, *i.e.,* dissemination, would be contrary to the public interest because it would be unfair to the officers who were the subject of the investigation and against whom the allegations were "not sustained," and because confidentiality promotes witness cooperation by civilians and by sworn personnel. The circuit court agreed.

The Committee points to Major Blackwell's statement that there were no "anonymous" sources in the particular

investigation at hand as undercutting confidentiality. This case does not involve an anonymous tipster; nor does it involve a "usually reliable source" whose identity is kept secret throughout the proceedings, but whose information forms part of probable cause. Here we deal with persons whose identities are known to the investigators and to the police officials who reviewed the investigation. The identities are known also to the Complaint Evaluation Board. Had disciplinary charges been formally filed and a disciplinary hearing conducted, the witnesses both in support of and in defense of the charges ordinarily would be identified to the hearing officers and on judicial review. On the other hand however, where, as here, the investigation concludes with a determination that the allegations are not sustained, fairness to the investigated officers and the avoidance of needless publicity to the cooperating witnesses, with possible inhibiting effects on future investigations, justify on public interest grounds the custodian's denial of inspection to one other than a person in interest.

That there is a public interest in the confidentiality of investigations of police officers is demonstrated by the provisions of LEOBR § 728(b)(5)(iii) and (iv). In order for law enforcement officers who are under investigation to obtain a copy of any exculpatory information in the investigatory file, the officers and their representatives must execute a confidentiality agreement "to not disclose any of the material contained in the record for any purpose other than to defend the officer." LEOBR § 728(b)(5)(iv)1. Further, officers who are under investigation cannot obtain non-exculpatory matter in the file or the identity of confidential sources, even by executing a confidentiality agreement. *Id.* § 728(b)(5)(iii)1 and 2. Contrary to the Committee's contention, the public interest in the confidentiality of investigations is broader than protecting the identity of confidential sources.

The public interest in the confidentiality of police department investigations of officers against whom complaints regarding alleged acts of excessive force, or even of dis-

courtesy, have been lodged also is embodied in Local Code § 16–48 ("Records containing the names or identification of police personnel, complainants, investigators and witnesses may not be disclosed or released to the general public.").

In other words, the seven circumstances listed in § 10–618(f)(2) that permit the custodian to deny records of a police investigation to a party in interest are illustrative of the concerns that would make disclosure contrary to the public interest. Those seven circumstances, however, are not exclusive of the public interest concerns that can justify a refusal to permit inspection under § 10–618(f)(1). *See* 64 Op. Att'y Gen. 236, 241–42 (1979).

## V

The Committee also contends that, even if the IID report falls within an exception to the general rule of disclosure, there must be a further determination whether one or more parts of the public record are severable and disclosable. Section 10–614(b)(3) in part provides that "[a] custodian who denies the application shall ... (iii) permit inspection of any part of the record that is subject to inspection and is reasonably severable." Section 10–618(a) speaks of denying inspection "of a part of a public record by the applicant [that] would be contrary to the public interest." Where, as here, the request for inspection relates to the record of a police department investigation and the request is made by other than a person in interest, the severability provisions of the Act operate in a relatively restricted fashion. This can be illustrated by comparing paragraph (1) and paragraph (2) of § 10–618(f).

Under paragraph (2), inspection may be denied to the person in interest "only to the extent" that the inspection would give rise to one of the seven enumerated circumstances. That statutory mandate requires analyzing the investigation file material in order to distinguish between that which reflects one or more of the enumerated circumstances and that which does not. In contrast, when the

request to inspect is made by one other than a person in interest and paragraph (1) applies, the "custodian may deny inspection of ... records of investigations conducted by ... a police department." Permissible denial applies to the entire record, to the extent that inspection would be contrary to the public interest.

In the instant matter the IID report has already been severed, at the request of specific witnesses who were interviewed in the course of the investigation and who obtained copies of their own statements. The public interest in maintaining confidentiality of the records of investigation does not prevent those limited disclosures. The Committee, on the other hand, was not a witness, and the report is not severable as to it on that ground.

From the standpoint of the Committee, as a third party to the investigation, a public interest in maintaining confidentiality applies, and the IID report is not severable on the record before us. The Committee has not presented the basis on which it contends that the record of a police investigation should be severed between the disclosable and the confidential. In any event, we are unable to review, from the standpoint of the § 10–618(f)(1) exception to disclosure, the circuit court's refusal to sever any part of the IID report, because the report has not been included in the record on appeal.

For all of the foregoing reasons, we hold that the custodian permissibly denied inspection of the IID report in this case.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR THE ENTRY OF A JUDGMENT AFFIRMING THE APPEALED JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND VACATING THE STAYED ORDER OF THAT COURT. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY MARYLAND COMMITTEE AGAINST THE GUN BAN.