Dear Delegate Barve:
You have requested our opinion whether the Maryland Public Information Act ("PIA") entitles a driver to certain information related to the driver's continued fitness for licensing. Specifically, you ask whether a driver is entitled to obtain (i) records reflecting the source of a referral to the Motor Vehicle Administration that results in the MVA's review of a driver's fitness to hold a license and (ii) a report by the MVA's Medical Advisory Board concerning the driver's fitness.
Our opinion is as follows: A driver is generally entitled under the PIA to obtain MVA records related to a review of the driver's fitness, including any report of the Medical Advisory Board. The driver would not be entitled, however, to records reflecting the identity of a referral source under circumstances in which the source is properly deemed confidential.
 I Background
The MVA has authority to suspend or revoke the driver's license of an individual who is "an unfit [or] unsafe . . . driver of a motor vehicle." § 16-206(a)(1)(ii) of the Transportation ("TR") Article, Maryland Code.[1] For example, a physical or mental condition that impairs an individual's ability to drive might make the individual "unfit" for continued licensing. See Motor Vehicle Admin. v. Mohler, 318 Md. 219,227, 567 A.2d 929 (1990). The MVA is prohibited from issuing a driver's license to someone "[w]ho is unable to exercise reasonable control over a motor vehicle due to disease or physical disability . . ." or whose driving, the MVA has "good cause" to believe, "would be inimical to public safety or welfare." TR § 16-103.1(5) and (6). Under TR § 16-207(a)(1)(ii), the MVA may require a driver "to submit to reexamination . . . if . . . the [MVA] has good cause to believe that the licensee is unfit, unsafe, or otherwise not qualified to be licensed."
Occasionally, the MVA's "good cause to believe that [a] licensee is unfit . . ." derives from a report from someone who has observed the individual's driving practices. Indeed, the information might come from a relative or someone else close to the driver. The informant might provide information to the MVA out of a fear that the driver's deteriorated health could lead to a tragic accident if the driver continued to drive.
Under TR § 16-208(a)(2), "after notice and hearing, the [MVA] may suspend for an indefinite period the license or privilege of any individual who cannot drive safely because of his physical or mental condition."[2] The information from the source might cause the MVA to review the situation and potentially begin a suspension proceeding. Prior to making this determination, the MVA would ordinarily refer the matter to its Medical Advisory Board for an advisory opinion. TR § 16-118(c)(1).
The Board consists of "qualified physicians and optometrists" who advise the MVA "regarding the physical and mental condition of individuals who seek to drive on highways in this State." TR § 16-118(a)(1). In carrying out its responsibilities, the Board may obtain information from the driver's physician and interview the driver. See COMAR 11.17.03.03. If, based on the advice of the Board, the MVA suspends a license indefinitely on grounds of ill health, the driver has a right to a hearing under TR Title 12, Subtitle 2.
 II Status of Referral Letters
The general rule under the PIA is that a requester is entitled to inspect "any public record" in the custody of a governmental entity. § 10-613(a) of the State Government ("SG") Article, Maryland Code. A letter to the MVA expressing concern about someone's fitness to continue driving is a "public record." SG § 10-611(f)(1)(i).
Nevertheless, not every "public record" is available for inspection. Some records must be withheld because a provision in other law or the PIA mandates confidentiality; others may be withheld because the PIA grants discretion to the custodian to withhold a particular kind of record.
An example of a discretionary exemption is SG § 10-618(f), which permits a custodian to deny inspection of investigatory records. Specifically, certain identified agencies (the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff) may withhold "records of investigations." Other agencies may withhold "an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose." SG § 10-618(f)(1)(ii). When, under the authority discussed in Part I above, the MVA compiles information as part of a process to decide whether to suspend a driver's license, it has created "an investigatory file for [a] law enforcement . . . purpose."
An agency's authority to withhold an investigatory file is limited, however, when the requester is a "person in interest":
 A custodian may deny inspection by a person in interest only to the extent that the inspection would:
 (i) interfere with a valid and proper law enforcement proceeding;
 (ii) deprive another person of a right to a fair trial or an impartial adjudication;
 (iii) constitute an unwarranted invasion of personal privacy;
 (iv) disclose the identity of a confidential source;
 (v) disclose an investigative technique or procedure;
(vi) prejudice an investigation; or
 (vii) endanger the life or physical safety of an individual.
SG § 10-618(f)(2). A driver whose fitness for licensing is under investigation is a "person in interest" for purposes of a request to review the investigatory file. SG § 10-611(e)(1). Seegenerally Mayor and City Council v. Maryland Committee Against theGun Ban, 329 Md. 78, 617 A.2d 1040 (1993). Therefore, the MVA may withhold from the driver only those portions of the file that, if disclosed, would result in any of the effects listed in SG § 10-618(f)(2).
The only likely basis under SG § 10-618(f)(2) for denying the driver access to the referral letter is when the author of the letter is "a confidential source." "While the government is not entitled to a presumption of confidentiality, generic circumstances may exist from which a court can find an implied assurance of confidentiality. In essence, a source may be considered confidential . . . if the informant's relation to the circumstances at issue supports an inference of confidentiality."Cofield v. City of LaGrange, 913 F. Supp. 608, 618 (D.D.C. 1996) (citation omitted). See generally United States Dep't of Justicev. Landano, 508 U.S. 165 (1993).
We think it reasonable, for example, for the MVA to treat as "a confidential source" a relative or close friend of the driver who, though pained by the need to do so, writes the MVA in an attempt to address the problem of a loved one who may not recognize that he or she is no longer fit to drive. The informant would reasonably expect confidentiality, so as to preserve the ties of intimacy that might well be frayed or broken if the driver knew the referral source. To quote the Colfield case cited above, "the informant's relation to the circumstances at issue supports an inference of confidentiality." Moreover, a breach of confidentiality, once generally known, would likely impair the MVA's ability to obtain information drivers' from relatives or friends in the future. If, however, the MVA cannot identify these or other circumstances rendering the referral source "a confidential source," then the driver would be entitled under the PIA to obtain the referral letter.
 III Status of Medical Report
The Maryland Vehicle Law contains a special confidentiality provision applicable to the records of the Medical Advisory Board:
(1) The records of the Medical Advisory Board:
(i) are confidential;
 (ii) may be disclosed only on court order; and
 (iii) may be used only to determine the qualifications of an individual to drive.
 (2) A person may not use these records for any other purpose.
As we read it, this provision is meant to safeguard the privacy of a driver whose status is under review by the Board. Because the Board's records are intended to be used "to determine the qualifications of an individual to drive," and because the driver is entitled to a hearing on that very issue, it is most unlikely that the General Assembly intended the confidentiality command in TR § 16-118(d)(1)(i) to bar access by the driver. Therefore, we do not regard this provision as "other law" to which the driver's presumptive right of access under the PIA must yield.
Nor, in our view, would any exemption in the PIA ordinarily prevent the driver from obtaining access to the Board's report about that driver. Although the report is undoubtedly part of the MVA's investigatory file, none of the grounds in SG § 10-618(f)(2) for denying access by a person in interest could ordinarily be asserted.[3] Another PIA provision, SG § 10-617(b), generally requires denial of "inspection of the part of a public record that contains medical or psychological information about an individual . . . ." The person in interest, however, is entitled to inspect this information. SG § 10-617(b)(2).[4]
 IV Conclusion
In summary, it is our opinion that a driver whose fitness to drive is under review because of the driver's health condition is generally entitled to inspect the MVA's records pertaining to that review, including a report of the Medical Advisory Board. The driver may not inspect the letter that initiated the MVA's review, however, if the letter would reveal the identity of a confidential source.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions Advice
[1] The MVA has authority to suspend or revoke a driver's license under many other circumstances, as well. These are not pertinent to your inquiry.
[2] Special provisions apply to suspensions based on the effect of an individual's epilepsy. TR § 16-208(a)(3) through (7).
[3] If the Board's report identified a confidential source, that portion may be redacted.
[4] SG § 10-617(b)(2) refers in artfully to an individual's access to medical records under Title 4, Subtitle 3 of the Health-General Article. This law generally allows a person in interest to inspect his or her own medical records; the exceptions in this law are not pertinent here.
 *Page 117