870 A.2d 1246

Victor **BLYTHE, Jr.**

v.

**STATE of Maryland.**

No. 0283, Sept. Term, 2004.

Court of Special Appeals of Maryland.

April 1, 2005.

494

498

500

Victor Blythe, Jr. (Pro Se litigant), Jessup, MD, for Appellant.

Steven M. Sullivan (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: HOLLANDER, SHARER, and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

CHARLES E. MOYLAN, JR., Judge (Retired, Specially Assigned).

As is frequently the plight of pro-se litigation, this case is a procedural mess. It may, however, with a touch of kindly forbearance, be salvageable.

## An Application for MPIA Disclosure

The appellant, Victor Blythe, Jr., on August 20, 2002, filed suit in the Circuit Court for Harford County, asking that, under the provisions of the Maryland Public Information Act (MPIA), the Harford County Police Department be required to turn over to him for his inspection the file from his earlier prosecution for homicide. On February 27, 2004, a hearing was held, at the end of which the motion to compel the disclosure of the file was denied. This appeal, with a few inconsequential bumps and corrections of course, is from that denial.

The file in issue was that of a seven-year-old homicide case against the appellant. That case was closed at the nisi prius level on August 15, 1997, when a Harford County jury convicted the appellant of two counts of first-degree murder, two counts of armed robbery, two counts of kidnapping, and a single count of conspiracy to commit murder. He was sentenced to two consecutive sentences of life imprisonment without the possibility of parole. On October 6, 1998, this Court affirmed the convictions in an unreported decision. The Court of Appeals on December 24, 1998, denied the petition for a writ of certiorari. At that point, the criminal case against the appellant had been finally concluded. The significance of that closure will be a major factor in our subsequent analysis.

## The Application Denied

In July of 2000, the appellant first sought to have the Harford County police (or Sheriff's Department or State's Attorney's Office) furnish him with a copy of the file. On July 14, he was notified by the County Attorney's Office that his request was being denied. The letter from the Assistant County Attorney simply recited, without any supporting detail, the statutory laundry list of possible reasons for a denial:

*The requested information is exempt from disclosure pursuant to Section 10–618(f)(2) of the State Government Article* of the Annotated Code of Maryland and the subsections contained therein. Specifically, disclosure of this in-

formation would interfere with a valid and proper law enforcement proceeding; constitute an unwarranted invasion of personal property; disclose the identity of confidential sources; disclose investigative techniques and procedures; prejudice an investigation; and, endanger the life or physical safety of individuals.

In addition, any contemplated use of these materials in post-conviction proceedings would be precluded by *Faulk v. State's Attorney for Harford County, et al.,* 299 Md. 493, 474 A.2d 880 (1984). Specifically, *whenever a defendant in a pending criminal proceeding seeks access to investigatory police reports, the Maryland Public Information Act does not require the disclosure* of said investigatory police reports.

(Emphasis supplied).

On August 9, the appellant wrote back to the County Attorney's Office, seeking "administrative review" of the July 14 denial of his request for the file. The Assistant County Attorney wrote back to the appellant on August 16, acknowledging the request for a review of the denial.

I am in receipt of your letter dated August 9, 2000. Your letter seeks administrative review in accordance with Section 10–622 of the State Government Article of the Annotated Code of Maryland.

The County Attorney's Office responded by erecting a legal stone wall that is daunting enough for us to interpret and must have completely overawed a pro-se inmate of the House of Correction.

[T]he Sheriff of Harford County, the custodian of these records, is not a unit subject to Subtitle 2 of Title 10 in accordance with Section 10–622(b). Section 10–203(a)(4) specifically excludes an officer or unit not part of a principal department of state government that is created by or pursuant to the Maryland Constitution, operates in only one county and is funded wholly or partly from local funds. *See also, Rucker v. Harford County,* 316 Md. 275, 558 A.2d 399 (1989). Because the Sheriff is not a unit subject to Subtitle

2 of Title 10 of the Annotated Code of Maryland, administrative review pursuant to Section 10–622 of the State Government Article is not available.

There was no further action in the case until the appellant, on August 20, 2002, filed in the Circuit Court a Motion for a Court Order Compelling MPIA Compliance. The court conducted a hearing on the appellant's motion on February 27, 2004. The motion was denied and this appeal followed.

### The Procedural Glitches

The appellee cites four reasons why the trial court's denial of the appellant's motion should be affirmed. The fourth is based upon the actual merits of the MPIA. The other three concern alleged procedural inadequacies of the appellant's case. The appellee argues that the trial court, rather than addressing the merits, should simply have dismissed the case as mistitled and misfiled. In its brief, the appellee refers, less than charitably, to the procedural lapses.

> The circuit court appropriately denied Blythe's motion to compel compliance with the MPIA, given [(1)] his failure to comply with the statutory procedure for judicial review, [(2)] his failure to provide notice to the county agency that denied his MPIA request, [and (3)] his failure to pursue judicial review within the applicable two-year limitations period set forth in Md.Code Ann., Cts. & Jud. Proc. § 5–110.

The trial court, however, chose to reach the merits. So shall we. In the last analysis, the procedural sins were venial, not mortal.

### A. "A Rose By Any Other Name ..."

■ As the appellee quite correctly points out, the judicial review available pursuant to § 10–623(a) is by way of an original civil action. Section 10–623(a) provides, in pertinent part:

Whenever a person ... is denied inspection of a public record, the person ... may file a complaint with the circuit court for the county where:

. . . .

(2) the public record is located.

■ The appellant, laboring under the misapprehension that this case was but the latest chapter in the saga that had begun with his arrest in 1996, styled the action as *State of Maryland v. Victor Junior Blythe*, Case Number 12–K–96–000348 IN." That was the original number of the criminal case filed on "04/23/1996" with its then current status then listed as "Closed/Inactive." The MPIA case now before us is, indeed, inaptly named. Is the mislabeling, however, such stuff as ultimate dismissal should be made of? An Order of this Court, filed on June 9, 2004, directing that the circuit court's judgment be formally entered and docketed, recognized the misnomer but had no difficulty in allowing the case to go forward:

On August 22, 2002, the Circuit Court for Harford County received appellant's "Motion for a Court Order Compelling MPIA Compliance," challenging Harford County's denial on July 14, 2000, of appellant's Public Information act request. *The action, though civil, was docketed in the instant criminal case* where appellant was convicted of murder on October 21, 1997. *For purposes of this Order, the aforesaid motion will be assumed to be a duly commenced civil action.*

(Emphasis supplied).

Another provision of that same Order indicated that, notwithstanding the inappropriate styling, the case was alive and well as it approached appellate review before us.

ORDERED that *the record on appeal will remain in this Court* and, subject to further Order of this Court, *the briefing and argument schedule in this matter shall not be affected by this Order.*

(Emphasis supplied).

Neither was the circuit court deterred by the name of the

case from reaching its merits.[1] But for the name, what is now before us as the case of *Blythe v. State* is indistinguishable from what would be before us had the case been named *Blythe v. State's Attorney for Harford County.* See, e.g., *Faulk v. State's Attorney for Harford County,* 299 Md. 493, 474 A.2d 880 (1984). We are not for a moment condoning slipshod labeling practices but, realistically, in terms of the extreme sanction sought by the appellee, we must conclude, with Juliet, "What's in a name?"

**B. Were the Proper Defendants Actually Left Without Notice?**

▇ The appellee's second attack on the appellant's pleading skills is scathing in its cataloging of the appellant's many procedural shortcomings:

> As pertinent Maryland Rules further require, upon the filing of such a complaint for judicial review, a summons and complaint must be served upon the defendant agency or custodian of records that denied the MPIA request. *See* Md. Rule 2–111(b) (plaintiff's obligations preliminary to issuance of summons); Md. Rule 2–112(a) (process—issuance of summons); Md. Rule 2–114 (process—content); Md. Rule 2–121 (process—service in personam).

> Here, it is undisputed that *Blythe did not file a complaint seeking judicial review in accordance with the requirement of § 10-623(a),* and that *summons and complaint were not served upon Harford County or its police department,* which was the agency that denied Blythe's MPIA request. *Nor is there any indication in the record that Blythe provided Harford County or its police department with notice of the Motion to Compel MPIA Compliance* filed in the criminal case. Under these circumstances, *the proceedings below did not even include the proper defendant* in an action for judicial review under § 10–623, which is the agency that denied the MPIA request. Only the State and

---

1. And see, e.g., *Hammen v. Baltimore County Police Department,* 373 Md. 440, 443 n. 2, 818 A.2d 1125 (2003).

Blythe are parties in the criminal case; neither Harford County or its police department are parties in that proceeding. Therefore, the motion filed by Blythe could not possibly comply with the judicial review provision of the MPIA, and the circuit court properly denied the motion.

(Emphasis supplied).

Notwithstanding those dire forebodings, the proper defendants, by some wondrous necromancy, 1) were fully on top of the case from the moment of its filing; 2) were on station before the trial court, admirably prepared, on the scheduled hearing date; and 3) defended the case with consummate competence and skill. They suffered under no misapprehension that the case was a criminal one. They displayed intimate familiarity with the MPIA, and especially with §§ 10–618(f)(2) and 10–623. They relied, with tactical adroitness, on *Faulk v. States Attorney for Harford County, supra.* The appellee does not suggest what more they might have done, had they been more formally notified and served.

In actuality, however, the proper defendants were fully notified. The appellant's initial request for his file was directed to the Harford County Police Department, as custodian of the file in issue. The letter was referred to the County Attorney's Office, which responded to the appellant on July 14, 2002, with copies of the reply being sent to both the Harford County State's Attorney's Office and the Harford County Sheriff's Office. The appellant's follow-up letter of August 9, 2000, was directed to the Sheriff for Harford County, as custodian of the file. It was the County Attorney's Office which, on August 16, answered the appellant's letter, again "copying" the State's Attorney's Office and the Sheriff's Office.

The appellant initiated this court proceeding on August 22, 2002, by filing his Motion for a Court Order Compelling MPIA Compliance. The motion identified itself as one brought pursuant to the MPIA. Albeit entitled *"Blythe v. State,"* the document referred to the "Respondent, the Harford County Police Department" and described the respondent as "a gov-

ernmental unit responsible for the custody, care and control of the records in question pertaining to the Petitioner." The relief sought by the appellant was a court order directed to the Harford County Police Department.

> **WHEREFORE,** *the Petitioner,* Victor Blythe, Pro se, respectfully requests that this Honorable Court grant the following and *prays that:*
>
> A. *This* Honorable Court *enter an Order, Compelling the Harford County Police Department* to disclose and copy any and all records, documents, correspondence, reports, photographs, maps, files, tape recordings and all other discovery/documentary material *with redaction,* relating in any way to any police investigation involving Petitioner's alleged role in the murders of Dwight Nelson and Marlene Ellis, specifically including the production of the documents in **Exhibit # 1.**

(Emphasis supplied).

The appellant's Certificate of Service asserted that copies of the motion had been sent to 1) the County Attorney's Office, 2) the State's Attorney's Office, and 3) the Sheriff's Office. The State's Response to Petitioner's Motion was promptly filed on September 16, 2002, by Vernon M. Gentile, an assistant state's attorney for Harford County. The response recognized that the appellant had misstyled his complaint by giving it the title and number of the original criminal case. Notwithstanding that, the response was fully alert as to what it was that the appellant was asking the court to do.

> That a *motion* such as petitioner's *is a request for judicial review under the State Government Article, Section 10–623,* and is a civil proceeding. *However, this motion has been filed pursuant to the original criminal proceeding,* as indicated in the captioned case number which this motion has been filed under.

(Emphasis supplied).

The same assistant state's attorney represented the appellee at the hearing before the circuit court on February 27, 2004, and competently defended the case on the MPIA merits.

From the filing of this case on August 22, 2002, through its final disposition on February 27, 2004, all interested parties were on full actual notice of all developments. No one was left in the dark. By whatever modality, all parties were fully on notice.

## C. The Statute of Limitations

■ In appellate brief, the appellee raises, for the first time, the defense that the appellant's motion to compel MPIA compliance was untimely filed. Maryland Code, Courts and Judicial Proceedings Article, § 5–110, provides, in pertinent part:

> *An action* to enforce any criminal or civil liability created under §§ [10–611 through 10–628 of State Government Article] of this Code *may be brought within two years from the date on which the cause of action arises.*

(Emphasis supplied).

■ It is the appellee's argument that the letter of August 16, 2000, in which the County Attorney's Office finally denied the appellant's request for his file, represented the date on which this cause of action accrued. That date, does, indeed, appear to be an accurate one for the accrual of the cause of action. As this Court noted in *Kline v. Fuller*, 56 Md.App. 294, 306, 467 A.2d 786 (1983),

> *The sheriff's denial* of Kline's request to inspect the two categories of documents at issue here *represented a final administrative action, which the circuit court was being asked to review.* Although both [§ 10–623] and Kline's petition speak in terms of a mandatory injunction ordering the production of the records, in such a proceeding, the court would necessarily have to determine whether the records in question are subject to the Act and, if so, whether the sheriff's refusal to disclose them is justified.

(Emphasis supplied). The filing of the appellant's complaint on August 22, 2002, did not come within the prescribed two years, but two years and six days later.[2]

---

**2.** It is ironic that it is the appellant, whose complaint of August 22, 2002, did not enjoy a hearing until February 27, 2004, 18 months later,

The short answer to the contention is that it has not been preserved for appellate review. In the appellee's answer of September 17, 2002 to the appellant's complaint, there was no mention made of a limitations problem. In the appellee's argument before the circuit court on February 27, 2004, there was no mention made of a limitations problem. The trial judge never made a ruling on limitations and was never called upon to make such a ruling. Accordingly, we will not address it.

Just as the appellee is doing with the limitations issue in this case, the defendant/custodian of records in *City of Frederick v. Randall*, 154 Md.App. 543, 841 A.2d 10 (2004), sought, at the appellate level, to justify non-disclosure on grounds that had not been specified in the initial letter denying the request for disclosure. Judge Salmon wrote for this Court in holding that such grounds were not cognizable either at the trial level or on appeal.

The City also claims that the denial of access was justified by exemptions contained in SG sections 10–615 and 10–617. The short and complete answer to that contention is that *the custodian of records is required under the MPIA to explain to the requester the reason for denial. Ms. Borden in her written response to the request never justified denial of access* based on sections 10–615 or 10–617; likewise, in her December 22, 2000, testimony, which was relied upon by both parties at the motions hearing, she never claimed that denial was based on those sections of the MPIA. *Under such circumstances, the motions judge did not err by failing to consider the provisions* of sections 10–615 or 10–617.[10]

---

who is being charged with tardiness, in that § 10–623(c)(1) expressly directs:

> (1) Except for cases that the court considers of greater importance, a *proceeding under this section,* including an appeal shall:
> (i) *take precedence on the docket;*
> (ii) *be heard at the earliest practicable date; and*
> (iii) *be expedited in every way.*

(Emphasis supplied).

[10] We also note that, before the motions court, the City did not contend that denial was justified under sections 10–615 or 10–617. *See* Md. Rule 8–131(a) (Ordinarily, except for jurisdictional issues, we will not decide issues neither raised nor decided below.).

154 Md.App. at 575, 841 A.2d 10 (emphasis supplied). See also *Prince George's County v. Washington Post Co.*, 149 Md.App. 289, 317 n. 21, 332 n. 33, 815 A.2d 859 (2003).

Even in rejecting the contention, we cannot help but note the feeble character of Courts Article, § 5–110 as an effective statute of limitations. Ordinarily, the phenomenon being litigated is a discrete historic event—an accident, a breach of contract, an act of professional malpractice, a crime. If litigation is not commenced within a prescribed period of time, the right to litigate, and to recover, may be lost forever. In such a context, a statute of limitations has critical importance. The focus of the litigation, moreover, is on the significance of what the parties did back at the time of the triggering historic event, not on the current propriety of what they are doing, or are about to do, at the time of trial.

The focus of an MPIA disclosure hearing, by contrast, is totally different. The concern of the circuit court hearing of February 27, 2004, for instance, was not on the propriety of the County Attorney's Office's denial of disclosure back on July 14 or August 16, 2000. It was on the propriety of Harford County's continuing denial of disclosure up to and including February 27, 2004.[3] A law school professor could

**3.** *Police Patrol Security Systems, Inc. v. Prince George's County*, 378 Md. 702, 721, 838 A.2d 1191 (2003), recognized the distinction between 1) disclosure then and 2) disclosure now, and the predominance of the latter concern over the former.

*Police Patrol's initial request*, however, *is now stale* (that is, *the information it sought* in August of 2001 *likely has changed over the passage of time*). Police Patrol conceded at oral argument before us that . . . *its request for information must be considered as seeking that information as it is recorded presently.* Police Patrol does not now seek the names, addresses and telephone numbers of every registered alarm user in the County as they were recorded in August 2001. Rather, *Police Patrol seeks the current information* contained in Coun-

easily conjure up a scenario wherein non-disclosure back on August 16, 2000, might have been perfectly appropriate then, but wherein non-disclosure might have become inappropriate as of February 27, 2004. Such a scenario, however, would not be at all damaging to the disclosure petition at the hearing on which the focus will be on non-disclosure now, not on non-disclosure back then.

July 14, 2000, and August 16, 2000, do not, in the context of this case, have the significance, as historic events, that a past tort or a past crime might have. They are but random points along a continuum of non-disclosure. The circuit court complaint, to be sure, does require a triggering event of a disclosure's having been sought and denied. If the letter of August 16, 2000, timely challenged, should have turned out to be too old to serve as the triggering event, however, the pursuit of disclosure, unlike the pursuit of damages for a whip-lash injury, would not have been forever compromised. The complainant would simply be put to the task of going out and manufacturing a fresh triggering event by making a fresh request for disclosure. Our point is that the § 5–110 statute of limitations, now being belatedly raised, is one of essentially minuscule significance.[4] It has little more than nuisance value.

In any event, the procedural glitches in this case were merely bumps in the road. After a few bounces, we are prepared to address the MPIA merits. The appellant's request to inspect his criminal file was given very short shrift. It deserves more painstaking consideration.

---

ty records. We, and ultimately the County, therefore must review the request according to the current provisions of the MPIA.
(Emphasis supplied).

4. An exception to this general observation might be the situation wherein the requester, who was denied disclosure by the custodian, seeks damages, pursuant to § 10–623(d), or disciplinary action, pursuant to § 10–623(e). In such a case, the focus might well be upon the time of original denial of access, as the pertinent historic event.

## Maryland Public Information Act of 1970

The archetype of public information acts was the federal Freedom of Information Act (FOIA), originally enacted in 1966 by Pub. L. No. 89–487, 80 Stat. 250, and now codified as 5 U.S.C. § 552. In *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), the Supreme Court summarized the purpose of the FOIA.

> Without question, *the Act is broadly conceived. It seeks to permit access to* official *information long shielded unnecessarily from public view* and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands.

(Emphasis supplied).

Within four years of the passage of the FOIA in 1966, Maryland followed suit. By Chapter 698 of the Laws of 1970, the General Assembly enacted the Maryland Public Information Act (MPIA) and codified it initially as Article 76A, §§ 1–5A. The provisions of the MPIA are almost verbatim those of the FOIA. As *Faulk v. State's Attorney of Harford County* explained, 299 Md. at 506, 474 A.2d 880, "The purpose of the Maryland Public Information Act . . . is virtually identical to that of the FOIA." Following from that symmetry between the two acts, the Court of Appeals further observed that "[w]here the purpose and language of a federal statute are substantially the same as that of a later state statute, interpretations of the federal statute are ordinarily persuasive." *Id.* But see *Office of the Governor v. Washington Post Co.*, 360 Md. 520, 759 A.2d 249 (2000).

*Faulk v. State's Attorney*, 299 Md. at 499, 474 A.2d 880, described the purpose of the FOIA:

> Its purpose was to provide the public the right of access to government information. *Its basic policy was in favor of disclosure. It mandated disclosure* of certain records in the possession of certain agencies *unless the requested records were within the scope of a statutory exemption.* A person denied the right to inspect any record covered by the FOIA had the right to expedited judicial review. In such a

judicial proceeding, *the burden was on the public official denying the right to inspect to show that the requested records were within the scope of a statutory exemption.*

(Emphasis supplied).

In *A.S. Abell Publishing Co. v. Mezzanote,* 297 Md. 26, 32, 464 A.2d 1068 (1983), the Court of Appeals described in almost identical terms the purpose of the MPIA.

[T]he Public Information Act expressly states that *its provisions "shall be broadly construed in every instance with the view toward public access."* Thus, the provisions of the Public Information Act reflect the legislative intent that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government.... *[T]he language must be liberally construed in order to effectuate the Public Information Act's broad remedial purpose.*

(Emphasis supplied). See also *Office of the Governor v. Washington Post Co.,* 360 Md. at 544–45, 759 A.2d 249; *State Prosecutor v. Judicial Watch,* 356 Md. 118, 134, 737 A.2d 592 (1999); *Prince George's County v. Washington Post,* 149 Md.App. 289, 306–08, 815 A.2d 859 (2003).

When the State Government Article was enacted by Ch. 284 of the Acts of 1984, §§ 1–5A of Article 76A were "transfer[red] without amendment" to the various provisions of State Government Article, §§ 10–611 through 10–628. In *Attorney General v. Gallagher,* 359 Md. 341, 353, 753 A.2d 1036 (2000), Judge Eldridge described the seamless transition.

There is no indication in the legislative history that the separate sections of Title 10, subtitle 6, of the State Government Article were to be interpreted differently from the separate subsections of former Article 76A, § 3. As pointed out above, *the transfer was* described in the Title of Ch. 284 as being *"without amendment."* Moreover, the revisor's notes to new §§ 10–615, 10–617, and 10–618 stated that they

were all "derived without substantive change" from Article 76A, § 3. *See* II *Laws of Maryland 1984* at 1357–1364. (Emphasis supplied).

### Organizational Framework of the MPIA

Title 10 of the State Government Article deals with "Governmental Procedures." Subtitle 6 of Title 10 deals with "Records." Part III of Subtitle 6 deals with "Access to Records," and in its 18 sections, 10–611 through 10–628, constitutes the Maryland Public Information Act.

After § 10–611 provides seven definitions, §§ 10–612 and 10–613 provide the central thrust of the MPIA. Section 10–612(a) is a general statement of principle.

*All persons are entitled to have access* to information about the affairs of government and the official acts of public officials and employees.

(Emphasis supplied). In implementing that principle, § 10–613(a) then directs that disclosure shall be the norm and that any denial of disclosure must be authorized by some express provision of the MPIA.

(1) *Except as otherwise provided by law, a custodian shall permit a person* or governmental unit *to inspect any public record* at any reasonable time.

(2) *Inspection* or copying of a public record *may be denied only to the extent provided under* this Part III of *this subtitle.*

(Emphasis supplied).

In construing the provisions of the MPIA, moreover, § 10–612(b) prescribes an interpretive tilt in favor of disclosure

To carry out the right set forth in subsection (a) of this section, unless an unwarranted invasion of the privacy of a person in interest would result, *this Part III of this subtitle shall be construed in favor of permitting inspection of a public record,* with the least cost and least delay to the person or governmental unit that requests the inspection.

(Emphasis supplied). See *Office of the Governor v. Washington Post,* 360 Md. at 544–45, 759 A.2d 249; *Fioretti v. Maryland State Board of Dental Examiners,* 351 Md. 66, 78, 716 A.2d 258 (1998) ("Under both the PIA and the FOIA, the public agency involved bears the burden in sustaining its denial of the inspection of public records."). And see *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 151–53, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989).

Section 10–614, "Applications," sets out, in detail, the procedures to be followed in making application to a custodian of records for the inspection of such records. It also spells out the procedures that must be followed by a custodian both in approving and in denying an application for disclosure.

### The Statutory Exemptions From Disclosure

Although the general thrust of the MPIA is in favor of disclosure, four sections of the act deal with circumstances in which disclosure either 1) **must** be denied or 2) **may** be denied in the discretion of the custodian. Section 10–615 deals with "Required denials—In general." The denial of inspection is mandatory if the public record is, by law, "privileged or confidential" or if inspection would be contrary to 1) a State statute, 2) a federal statute or regulation, 3) a rule of the Court of Appeals, or 4) a court order. *Police Patrol v. Prince George's County,* 378 Md. 702, 710–15, 838 A.2d 1191 (2003); *Caffrey v. Dept. of Liquor Control,* 370 Md. 272, 303–04, 805 A.2d 268 (2002); *State Prosecutor v. Judicial Watch,* 356 Md. 118, 130–33, 737 A.2d 592 (1999).

Section 10–616 deals with specific categories of records and mandates the denial of an application to inspect such types of records as, e.g., adoption records, welfare records, letters of reference, hospital records, student records, personnel records, etc. *Kirwan v. The Diamondback,* 352 Md. 74, 82–84, 721 A.2d 196 (1998); *Baltimore City Police Department v. State,* 158 Md.App. 274, 281–83, 857 A.2d 148 (2004).

Section 10–617, by contrast, deals with the mandatory denial of inspection with respect to those parts of otherwise disclosa-

ble public records containing "Specific information," such as, e.g., medical and psychological information, sociological information, commercial information, financial information, etc. *Kirwan v. The Diamondback,* 352 Md. at 84–87, 721 A.2d 196; *City of Frederick v. Randall,* 154 Md.App. 543, 560, 841 A.2d 10 (2004).

Sections 10–615, 10–616, and 10–617 all deal with the mandatory denial, under certain conditions, of an application to inspect records. Section 10–618, by contrast, deals with "Permissible denials" and entrusts certain disclosure determinations to the discretion of the custodian of the records. In *Attorney General v. Gallagher,* 359 Md. 341, 353–54, 753 A.2d 1036 (2000), Judge Eldridge discussed this difference between mandatory and discretionary denials.

> *Sections 10–615 and 10–617 are both mandatory provisions,* meaning that *when they are applicable* to a particular record, *the custodian must deny inspection* of that record. *This is made clear by the use of the word "shall"* in both provisions, which specifically state that "a custodian shall deny inspection" when one of the enumerated exemptions under those sections applies. *Section 10–618, however, is a discretionary provision,* stating that "if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest, *the custodian may deny inspection* by the applicant of that part ...." § 10–618(a).
>
> As the petitioner correctly points out, the discretionary authority of the custodian under § 10–618 cannot arise if the record cannot be disclosed because of a mandatory provision in §§ 10–615 or 10–617.

(Emphasis supplied). See also *Police Patrol v. Prince George's County,* 378 Md. 702, 712, 838 A.2d 1191 (2003); *Caffrey v. Dept. of Liquor Control,* 370 Md. 272, 296–97, 805 A.2d 268 (2002); *Mayor & City Council of Baltimore v. Maryland Committee Against the Gun Ban,* 329 Md. 78,81, 617 A.2d 1040 (1993); *City of Frederick v. Randall,* 154 Md.App. at 560–61, 841 A.2d 10.

## Permissible Non–Disclosure Under § 10–618

Our concern in this case is exclusively with § 10–618, dealing with "Permissible denials." Section 10–618 lists eight very specific categories of documents or information with respect to which the custodian may, under certain conditions, deny the right of an applicant to inspect a part of a public record. The types of possibly protected records include such categories as, e.g., interagency and intra-agency documents, examination questions, research projects, pre-purchase real property appraisals, site-specific locations of endangered species, inventions owned by State public institutions of higher learning, trade secrets, etc.

■ Two characteristics should be noted that are common denominator features of the permissible denial of disclosure for all of the categories of records covered by § 10–618. One is that the denials of inspection that are permitted are not blanket denials for an entire record but are more narrowly focused denials of "a part of a public record." The second critical requirement for discretionary denial is that the custodian of the record must believe, and ultimately demonstrate to a court, that the inspection of a certain part of the record "would be contrary to the public interest." Subsection (a) provides:

> *In general.*—Unless otherwise provided by law, if a custodian believes that *inspection of a part of a public record* by the applicant would be contrary to the public interest, *the custodian may deny inspection* by the applicant *of that part,* as provided in this section.

(Emphasis supplied).

Some discussion is appropriate of these two characteristics of a permissive denial of inspection under § 10–618 generally. They are the requirements of 1) the severance of that part of a public record deserving of non-disclosure from other parts of the record not so deserving and 2) the burden of proof that is allocated to the custodian of the record to justify non-disclosure.

## Blanket Exemptions Versus Severability

██ Even when one or more of the statutory exemptions from disclosure is clearly involved, the MPIA's strong bias in favor of disclosure dictates that the exemptions from disclosure must be applied narrowly. Even if some information in a contested file is exempted from disclosure, therefore, the exemption may not be blanketly invoked to shield an entire file if the shielding of only a part of the file would suffice to serve the purpose of the exemption. Just as § 10–618(a) provides for the permissible denial of inspection of "a part of a public record," so too does § 10–614(b)(3)(iii) impose upon a custodian who denies an application for inspection the obligation to "permit inspection of any part of the record that is subject to inspection and is reasonably severable."

In *Attorney General v. Gallagher*, 359 Md. at 350, 753 A.2d 1036, the Court of Appeals pointed out how § 10–614(b)(3)(iii) imposes on the custodian the obligation to sever those parts of a record that are properly subject to disclosure from other parts of the record that may be shielded by an exemption.

The General Assembly mandated, in § 10–614(b)(3)(iii) of the Act, that *a custodian should "permit inspection of any part of [a] record that is subject to inspection and is reasonably severable."* The limiting language of subsection (f)(2) has consistently been interpreted by this Court *as a limitation upon the custodian's authority to withhold an investigatory file in its entirety* when claiming an exemption under that subsection.

(Emphasis supplied).

In *Fioretti v. Maryland State Board of Dental Examiners*, 351 Md. 66, 716 A.2d 258 (1998), the Board of Dental Examiners attempted to justify non-disclosure on the ground that the record was an "investigatory file" and that its disclosure would prejudice a pending investigation. Judge Cathell's opinion made clear at the outset that an entire record is not shielded from view simply because a part of it may be.

[I]f the Dental Board could demonstrate to the trial court that disclosure would prejudice its investigation, it then

must show to what extent disclosure would prejudice its investigation. To that end, *the government agency can withhold only such documents or portions thereof to the extent such harm would occur.* It is entirely possible, therefore, that *even though Dental Board files fit within the exemption, a substantial portion of those documents could be required to be disclosed* because release of only a small portion of the records would "prejudice" the government agency's investigation.

351 Md. at 74 n. 7, 716 A.2d 258 (emphasis supplied). Judge Cathell further explained that the modality for severing the disclosable from the non-disclosable may be a redaction of the protected information.

[T]he circuit court can deny inspection *only to the extent* that disclosure would result in prejudice to the particular investigation. That is, if the Dental Board only could show that disclosure of the name of the person filing the complaint would have prejudiced its investigation, then *the files should have been disclosed to appellant with the complainant's name,* or any other information identifying the complainant, *redacted.*

351 Md. at 87, 716 A.2d 258 (emphasis in original).

Chief Judge Wilner stated the same principle for this Court in *Maryland Committee Against the Gun Ban v. Mayor and City Council of Baltimore,* 91 Md.App. 251, 265, 603 A.2d 1364 (1992), *rev'd on other grounds, Baltimore v. Maryland Committee,* 329 Md. 78, 617 A.2d 1040 (1993).

The department seems to argue that, because some reports contain personal information that needs to be protected, it is necessary to shield *all* IID reports. But *the law does not allow such generic, sweeping protection.* It looks to the nature of the individual records actually sought, not that of other records compiled under different circumstances.

(Emphasis supplied).

Judge Rodowsky wrote for the Court of Appeals in *Cranford v. Montgomery County,* 300 Md. 759, 777, 481 A.2d 221 (1984), in unequivocally declaring that generic exemptions are

not permitted and that the burden of justifying the non-disclosure of even part of a record is squarely cast upon the custodian of the record.

> The Md. Act imposes *the burden on the records custodian* to make a careful and thoughtful examination of each document which fairly falls within the scope of the request in order for the custodian initially *to determine whether* the document or *any severable portion of the document meets all of the elements of an exemption. The General Assembly did not intend for custodians broadly to claim exemptions* and thereby routinely to pass to the courts the task of performing *in camera* inspections.

(Emphasis supplied).

In *Office of the Governor v. Washington Post Co.*, 360 Md. 520, 545, 759 A.2d 249 (2000), Judge Eldridge pointed out that one possible modality for severing the disclosable from the non-disclosable may be an *in camera* inspection of the record by the trial judge.

> An *in camera* inspection by the trial court, while not always necessary, may in some cases be "needed in order to make a responsible determination on claims of exemptions." In addition, *if parts of a record are exempt but other parts can be revealed, the Act favors severability.*

(Emphasis supplied).

As a further aid to a court's determination as to what part of a record might be exempt from disclosure and what part might not, the court is empowered, under the MPIA, to order the custodian of a record to submit to the court a "Vaughn index" of documents, identifying each document, briefly summarizing each, and stating the particular exemption that is claimed for each. As to the term "Vaughn index," *State Prosecutor v. Judicial Watch*, 356 Md. 118, 121 n. 1, 737 A.2d 592 (1999), explained the origin of the phrase.

> The reference is to *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), in which the Circuit Court of Appeals for the District of Columbia required the responding party to provide a list of documents in possession, setting forth the date, author,

general subject matter and claim of privilege for each document claimed to be exempt from discovery. *See also, Lewis v. I.R.S.,* 823 F.2d 375, 377 n. 3 (9th Cir.1987) ("A Vaughn index is a system of itemizing and indexing that correlates each of the government's justifications for its refusal to disclose the documents with the actual portion of the documents at issue.").

See also *Attorney General v. Gallagher,* 359 Md. 341, 344–45, 753 A.2d 1036 (2000); *Cranford v. Montgomery County,* 300 Md. 759, 777–79, 481 A.2d 221 (1984); *Gallagher v. Attorney General,* 127 Md.App. 572, 575, 736 A.2d 350 (1999); *rev'd on other grounds,* 359 Md. 341, 753 A.2d 1036 (2000); *City of Baltimore v. Burke,* 67 Md.App. 147, 150, 506 A.2d 683 (1986).

In this case, there was by the custodian not so much as a nod in the direction of severability or an *in camera* inspection or a Vaughn index. The letter of July 14, 2000 from the County Attorney's Office to the appellant was a plenary denial, with no reference made to the contents of any specific documents contained in the larger file. The State's Response to Petitioner's Motion, filed on September 16, 2002, similarly made no mention of severability, but claimed broadly that "[s]aid information is not public information as contemplated by the Act." The unilluminating ruling of the trial court did not refer to the possibility of severability.

I've reviewed the letter from Mr. Roberts in the County Law Department, dated July 14, 2000, which denied access and [this case is] also controlled by the case [of] *Faulk v. State's Attorney for Harford County,* in 299 Md., which I think [is] controlling. I will therefore deny the request of Mr. Blythe and deny the motion.

### The Burden of Justifying Non–Disclosure

█ Closely intertwined with § 10–618's pursuit of severability, as an amelioration of an exemption from disclosure, is the allocation of the burdens of 1) exploring the feasibility of severability and 2) justifying non-disclosure generally. Section 10–623 provides for the judicial review of a denial of a

request to inspect a public record.[5] Subsection (b)(2) allocates the burden of justification to the custodian, as it provides:

(2) The defendant:

(i) has the burden of sustaining a decision to deny inspection of a public record.

*Fioretti v. Board of Dental Examiners,* 351 Md. at 78, 716 A.2d 258, also addressed the allocation of the burden of justifying non-disclosure.

Under both the PIA and the FOIA, *the public agency involved bears the burden in sustaining its denial* of the inspection of public records.

(Emphasis supplied). The *Fioretti* opinion made it clear that a mere bald assertion that a particular exemption applies will not suffice to satisfy this burden of justification.

In its brief before this Court, appellee asserts the circuit court had a sufficient basis for determining that the Board's files were compiled for a law enforcement or prosecution purpose. We disagree. As we stated *supra, the government agency bears this burden. Here, appellee's motion was not supported by any affidavits, a summary of the so-called investigatory files, or other relevant evidence. The only information appellee put forward* relative to the first step of the PIA exemption inquiry *was its bald assertion that* because the Board may refer the matter for some form of administrative prosecution, *the files it had compiled were of a law enforcement nature.* Appellee did not explain to the trial court, for instance, the nature of its "investigation,"

---

**5.** As Judge Wilner pointed out for this Court in *Kline v. Fuller,* 56 Md.App. 294, 305, 467 A.2d 786 (1983), there was initially, under the MPIA, no right of judicial review for an applicant aggrieved by non-disclosure. That relief was only provided in 1978.

When the public general law was first enacted in 1970, there was no provision in it for judicial review.... In 1978, the Legislature rewrote § 5, providing, as additional enforcement mechanisms, (1) the right of administrative review under the "contested case" sections of the Administrative Procedure Act, if the agency or official was otherwise subject to that Act, and (2) the right to seek judicial review—*i.e.,* to seek a court order compelling the production of the requested document.

what typically occurred upon the conclusion of such investigations, or the possible penalties appellant could face.

351 Md. at 83, 716 A.2d 258 (emphasis supplied).

*Cranford v. Montgomery County,* 300 Md. at 771, 481 A.2d 221, also spoke to the allocation of the burden, "The custodian who withholds public documents carries the burden of justifying non-disclosure." The *Cranford* opinion further noted that merely conclusory references to claimed exemptions will not suffice to satisfy the burden.

*If an agency has frustrated judicial review by presenting testimony or affidavits in conclusory form, the trial court may,* depending upon all of the circumstances, appropriately *exercise its discretion* by ordering more detailed affidavits or by conducting an *in camera* inspection or *simply by ordering disclosure because of the agency's failure to meet its burden of satisfying the court that an exemption applies.*

300 Md. at 780, 481 A.2d 221 (emphasis supplied). See also *Office of the Governor v. Washington Post Co.,* 360 Md. at 545, 759 A.2d 249.

In his August 20, 2002 Motion for a Court Order Compelling MPIA Compliance, the appellant, freely acquiescing in advance to any necessary redaction, asked for the police investigatory file concerning his role in the 1996 murders of Dwight Nelson and Marlene Ellis. The State's Response, of September 16, 2002, actually sought to reverse the burden of identifying disclosable and non-disclosable documents within the larger file, as it alleged

That Petitioner neglects to specify in his motion what records were requested.

▬▬ That burden of particularization, however, was not the appellant's, but the appellee's. In terms of identifying pertinent portions within a larger record, *Cranford v. Montgomery County,* 300 Md. at 778, 481 A.2d 221, quoted with approval from *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir.1973):

Because *"courts will simply no longer accept conclusory and generalized allegations of exemptions," the first burden on an agency* which seeks judicial approval of a claim of

exemption *is to provide "a relatively detailed analysis in manageable segments."*

(Emphasis supplied).

### Shielded Records of Investigations Under § 10–618(f)

The argument of the appellee is that it is relieved of any burden to offer a particularized justification for any partial or total non-disclosure because it is operating under the umbrella of § 10–618(f), dealing with a crime-related investigation. This is, to be sure, a § 10–618(f) case.

As we zoom in on § 10–618(f), we initially observe the salient feature that it is divided into two parts. Subsection (f)(1) describes, generally, the coverage of this "Investigations" category of permissible denials.

(f) *Investigations.*—(1) Subject to paragraph (2) of this subsection, *a custodian may deny inspection of:*

(i) *records of investigations conducted by* the Attorney General, *a State's Attorney,* a city or county attorney, *a police department, or a sheriff;*

(ii) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or

(iii) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a State or local correctional facility, or a sheriff.

(Emphasis supplied).

 The murder file against the appellant is covered, by definition, by § 10–618(f), in that it is a record of the criminal investigation conducted by the Harford County State's Attorney's Office and/or the Harford County Sheriff's Office [6] linking the appellant to the murders of which he was convicted in 1997. The appellee then leaps uncritically from

---

**6.** Because the investigatory file was compiled by the State's Attorney's Office or the Sheriff's Office, it was not even necessary to show that the investigation was for a law enforcement or prosecution purpose. In the case of certain enumerated agencies, that purpose is presumed. *Super-*

the section's coverage of an investigatory file to an automatic exemption from disclosure. In the State's Response to Petitioner's Motion, it flatly claimed, in absolute terms, that the MPIA did not apply to a "criminal investigation file used to prosecute [a] criminal case."

> The petitioner apparently is seeking access to the criminal investigation file used to prosecute the criminal case against him. *The Maryland Public Information Act does not apply to parties in a criminal proceeding.* Said information is not public information as contemplated by the Act.

(Emphasis supplied). In its appellate brief, the appellee relied on a similarly expansive reading of § 10–618(f).

> *The denial was based on the investigations exemption of* the MPIA, Md.Code Ann., State Gov't § 10–618(f).

(Emphasis supplied).

■ Under § 10–618(f), the custodian of an investigatory file possesses the discretion to deny its disclosure to applicants

---

*intendent v. Henschen,* 279 Md. 468, 475, 369 A.2d 558 (1977), explained the nuance of difference between (f)(1)(i) and (f)(1)(ii).

Section [10–618(f)(1)] is in the disjunctive, excepting records of investigation by the enumerated types of law enforcement agencies *or* investigatory files compiled for any other law enforcement or prosecution purposes. *The statutory provision exempts from the mandatory disclosure requirement two categories of documents:* (1) investigatory records of certain named law enforcement agencies; (2) investigatory records of other governmental agencies which were compiled for law enforcement or prosecution purposes. *It is only with respect to the second category that there is an express requirement that the records be compiled for law enforcement or prosecution purposes.* The statutory language, and particularly the use of the word *other* before the phrase "law-enforcement or prosecution purposes," suggests that *the Legislature believed that investigatory records of one of the enumerated law enforcement agencies were presumptively for law enforcement or prosecution purposes, but that investigatory records compiled by other agencies might or might not be for such purposes.*

(Emphasis supplied). See also *Fioretti v. Board of Dental Examiners,* 351 Md. at 79, 716 A.2d 258 ("[T]he legislature intended to differentiate between investigative files compiled by the law enforcement agencies enumerated in § 10–618(f)(1)(i), which essentially are presumed to be of a law enforcement nature, and investigatory files collected by other unenumerated agencies pursuant to § 10–618(f)(1)(ii)."); *State Prosecutor v. Judicial Watch,* 356 Md. 118, 139–40, 737 A.2d 592 (1999).

for inspection if, but only if, the custodian, pursuant to § 10–618(a), further believes that the disclosure "would be contrary to the public interest." In his concurring opinion in *Fioretti v. Board of Dental Examiners*, 351 Md. at 100, 716 A.2d 258, Judge Wilner emphasized that a custodian cannot justify non-disclosure simply by invoking the mantra that disclosure would "prejudice an investigation."

*An agency cannot satisfy its statutory burden* of "sustaining a decision to deny inspection of a public record" *by simply asserting that all of the records sought would prejudice an investigation,* for, if it could do that, the Public Information Act would be meaningless.

(Emphasis supplied).

In such a situation the custodian still bears the burdens both 1) of exploring the feasibility of severing the record into disclosable and non-disclosable parts; and 2) of demonstrating, with particularity and not in purely conclusory terms, precisely why the disclosure "would be contrary to the public interest." The custodian in this case did not even attempt to shoulder either of those burdens.

Under § 10–618 generally, there was historically no distinction drawn between persons generally who sought to inspect an investigatory file and a person situated such as the appellant in this case. That was the state of the MPIA law until 1978.

### Subsection 10–618(f)(2):

### The Favored Status Of a "Person in Interest"

What is now subsection 10–618(f)(2) was added to the MPIA by Chapter 1006 of the Acts of 1978. It imposed, for the exclusive benefit of "a person in interest," a stringently more severe limitation on the prerogative of a custodian to deny disclosure.

(2) *A custodian may deny inspection by a person in interest only to the extent that* the inspection would:

(i) interfere with a valid and proper law enforcement proceeding;

(ii) deprive another person of a right to a fair trial or an impartial adjudication;

(iii) constitute an unwarranted invasion of personal privacy;

(iv) disclose the identity of a confidential source;

(v) disclose an investigative technique or procedure;

(vi) prejudice an investigation; or

(vii) endanger the life or physical safety of an individual.

(Emphasis supplied).

The critical change in the law was the addition of the adverbial modifier "only to the extent that." The limiting of denial by a custodian to the seven exempting circumstances enumerated in subsection (f)(2) essentially paralleled a similar constriction of the exemption for investigatory files under the FOIA, imposed in 1974. *National Labor Relations Board v. Robbins Tire and Rubber Co.*, 437 U.S. 214, 221–22, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), explained:

*Exemption 7 as originally enacted permitted nondisclosure of "investigatory files compiled for law enforcement purposes* except to the extent available by law to a private party." *In 1974, this exemption was rewritten to permit the nondisclosure of "investigatory records* compiled for law enforcement purposes," *but only to the extent that producing such records would involve one of six specified dangers.*

(Emphasis supplied).

Six of the enumerated exemptions under § 10–618(f)(2) are essentially linguistic clones of the six enumerated dangers under Exemption 7 of the FOIA. Only § 10–618(f)(2)(vi) stands alone—the extent to which the inspection would "prejudice an investigation." It would appear that that danger, probably included in the § 10–618(f)(2) catalogue out of an excess of caution, would be subsumed, both in Maryland and federally, by the enumerated danger that an inspection would

"interfere with a valid and proper law enforcement proceeding" under (f)(2)(i).

*Faulk v. State's Attorney for Harford County,* 299 Md. 493, 501, 474 A.2d 880 (1984), made it clear that Maryland was following the federal lead and that material did not qualify for an automatic exemption simply "because it was contained in an investigatory file."

According to the Supreme Court, the purpose of Exemption 7(A) was to make clear that *Exemption 7* as originally enacted *did not protect material simply because it was contained in an investigatory file.*

(Emphasis supplied).

*Baltimore v. Maryland Committee Against the Gun Ban,* 329 Md. at 93, 617 A.2d 1040, examined the legislative history of § 10–618(f)(2) and pointed out that the new provision was intended to provide a broad grant of disclosure to the "person in interest," to wit, the actual subject of the investigative file, a right of disclosure far broader than that available to persons other than the "person in interest."

[T]he Senate Committee "deemed it both necessary and preferable to provide for some type of outside vigilance wherein *citizens are afforded the right to view those materials in the possession of law enforcement agencies respecting them personally.*" As a result, the Senate Committee recommended, *inter alia,* that the then Act be amended to provide "that a *'person [in] interest'* as defined in the statute *may be denied the right to inspect records* referred to in subsection (b)(i) thereof *only to the extent that the production of such records would hamper or jeopardize valid law enforcement activities as particularly defined."*

That recommendation was incorporated into Chapter 1006 of the Acts of 1978. It added to former Art. 76A, § 3(b)(i), the proviso that *"the right of a person in interest to inspect the records may be denied only to the extent that the production of them would"* generate one of the circum-

*stances currently enumerated in subparagraphs (i) through (vii) of § 10–618(f)(2).*

(Emphasis supplied).

*Baltimore v. Maryland Committee,* 329 Md. at 96–97, 617 A.2d 1040, went on to hold that the need to examine a file closely for the purpose of possible severability is particularly acute when the applicant for disclosure is "a person in interest" pursuant to § 10–618(f)(2).

Under paragraph (2), inspection may be denied to the person in interest "only to the extent" that the inspection would give rise to one of the seven enumerated circumstances. *That statutory mandate requires analyzing the investigation file material in order to distinguish between that which reflects one or more of the enumerated circumstances and that which does not.* In contrast, when the request to inspect is made by one other than a person in interest and paragraph (1) applies, the "custodian may deny inspection of ... records of investigations conducted by ... a police department." Permissible denial applies to the entire record, to the extent that inspection would be contrary to the public interest.

(Emphasis supplied.)

In *Frederick v. Randall,* 154 Md.App. 543, 561–62, 841 A.2d 10 (2004), Judge Salmon explained precisely how the "more favorable treatment" extended to a person in interest would manifest itself.

When a request for public documents is made by *a person in interest,* that person *is entitled to more favorable treatment under section 10–618(f)(2) of the MPIA than a requester who falls under section 10–618(f)(1). The treatment is more favorable* under section 10–618(f)(2) *because* (1) if the request falls under (f)(2), *the custodian can deny the request only for one of the seven reasons set forth in Paragraph (f)(2),* whereas under (f)(1) the discretion of the record custodian is broader and the request may be denied if, for any reason, disclosure would be contrary to the public

interest; (2) *under Paragraph (f)(2), a particularized show-ing as to every document withheld is necessary.*

(Emphasis supplied).

*Office of the State Prosecutor v. Judicial Watch,* 356 Md. 118, 139, 737 A.2d 592 (1999), also referred to the favored status of a person in interest

The appellee is not a person in interest and, thus, is not entitled to *the more favorable treatment accorded such persons.*

(Emphasis supplied). In that opinion, Chief Judge Bell, 356 Md. at 136, 737 A.2d 592, explained the distinction in more detail.

Section (f)(1) does refer to *Section (f)(2),* however, which *places restrictions on the custodian's right to deny inspec-tion to a person in interest, i.e.* "a person or governmental unit that is the subject of a public record or a designee of the person or governmental unit." § 10–611(e). *When a person in interest is involved, Section (f)(2) contemplates inspection unless disclosure would have the enumerated consequences;* hence, it implicitly requires, in that circum-stance, some explanation or justification for the decision to deny inspection.

(Emphasis supplied). See also *Briscoe v. City of Baltimore,* 100 Md.App. 124, 129–31, 640 A.2d 226 (1994); *Maryland Committee v. Baltimore,* 91 Md.App. at 262, 603 A.2d 1364 ("[I]f the one seeking access is 'a person in interest,' access may be denied only if one or more of seven enumerated circumstances exist.").

Precisely because of the favored status enjoyed by a person in interest, the obligation on the custodian is particu-larly heavy to justify an exemption pursuant to § 10–618(f)(2). The custodian must point to precisely which of the seven circumstances enumerated by the rule would require the exemption and explain precisely why it would do so.

In *Maryland Committee v. Baltimore,* 91 Md.App. at 264–65, 603 A.2d 1364, Chief Judge Wilner's analysis for this Court

looked at the seven exempting circumstances, one by one, and concluded that, as to each, the custodian had failed to carry his burden of justification. Notwithstanding the fact that the Court of Appeals, in its *Baltimore v. Maryland Committee, supra,* reversed our holding that the Committee Against the Gun Ban was a party in interest, Judge Wilner's analysis, even as an *arguendo* hypothetical, remains as a model of how a court should assess a claim of exemption under § 10–618(f)(2). Note that with respect to each of the seven possible reasons for exemption, the burden of justification was on the custodian. More was required than a merely conclusory incantation of the exception.

This takes us, then, to the seven circumstances enumerated in § 10–618(f)(2) that would justify non-disclosure, and, as to them, *we are at a loss to understand how the court could have rationally arrived at its announced findings, for there was no evidence whatever to support them. This investigation had been concluded* without further action at least a year before the request for access to the report was made, and *so there was no investigation to be prejudiced by disclosure ((f)(2)(vi)).* The department, through counsel, conceded at Major Blackwell's deposition that *there was no law enforcement proceeding with which disclosure could interfere. ((f)(2)(i)).* The department also stipulated that, to its knowledge, *there was no impending trial or adjudication which disclosure could prejudice ((f)(2)(ii))* and that *disclosure would not cause danger to or imperil the life or safety of any individual ((f)(2)(vii)).* Major Blackwell conceded that no anonymous sources were used in the investigation, and so *disclosure would not reveal the identity of a confidential source ((f)(2)(iv)).*

The nub of the department's reliance on subsection (f) seemed to be the concern that, if confidentiality of IID investigations could not be assured, people would be reluctant to cooperate with the investigators and provide information. *To some extent, that implicates subsection (f)(2)(iii) and (v)—unwarranted invasion of personal privacy and disclosure of an investigative technique or proce-*

*dure.* The problem as to the first of these is that *there was not even a suggestion, much less evidence, that disclosure of this report would invade anyone's personal privacy.* ... *With respect to subsection (f)(2)(v), again, the department produced no evidence that disclosure of the report would reveal an investigative technique or procedure.*

91 Md.App. at 264–65, 603 A.2d 1364 (emphasis supplied).

### A Criminal Defendant Is a Quintessential "Person in Interest"

 Who, then, is such "a person in interest" entitled to such favored status? *Baltimore v. Maryland Committee,* 329 Md. at 92, 617 A.2d 1040, clearly stated that a criminal defendant, as the person investigated, is a "person in interest" with respect to that investigatory file. The opinion also made it clear that, although records of investigations by a police department once enjoyed broad protection, that protection was significantly narrowed by the 1978 amendment with respect to "a person in interest."

The Act's history covering reports of police investigations also makes clear that *the "person in interest" referred to in § 10–618(f)(2) is the person who is investigated.* ... Section 3(b)(i) of *former Art. 76A* addressed records of investigations conducted by a police department, but it *did not contain any special provisions concerning inspection by a person in interest.* ... *What is today paragraph (2) of § 10–618(f) came into the Act by Chapter 1006 of the Acts of 1978.*

(Emphasis supplied).

Section 10–611(e) defines "Person in interest" in the following pertinent terms:

"Person in interest" means:

(1) a person ... that is the subject of a public record.

The appellee, nonetheless, stubbornly insists that a criminal defendant is somehow ineligible to inspect his criminal file if his purpose is to assist himself in some future litigation. The appellee would thus transform the favored status of some

persons in interest into an actually unfavored status. In the State's Response to Petitioner's Motion, it asked the court to rule

that said Motion be dismissed as *the Maryland Public Information Act does not apply to requests for records* of a criminal investigation, *in a matter wherein Petitioner was a party-defendant.*

(Emphasis supplied). At the hearing before the circuit court, the assistant state's attorney continued to argue that the appellant's request for inspection of his file should be denied because "he's trying to prepare for a post-conviction proceeding, that's a criminal proceeding, and because he's either in the middle of a criminal proceeding or he's preparing for a criminal proceeding."

The appellee is wrong. To the extent to which it is arguing that a desire or purpose by the appellant to discover a legal flaw in his murder convictions would be an improper or disqualifying motivation for invoking the MPIA, *Moberly v. Herboldsheimer,* 276 Md. 211, 345 A.2d 855 (1975), is dispositive to the contrary. The Memorial Hospital Board of Governors had sought to forestall an MPIA inspection of records, alleging that the requested disclosure would do substantial injury to the public interest because it was sought with an improper motive, i.e., the desire to expose the Memorial Hospital and its superintendent to public ridicule. In refusing to sanction non-disclosure based on the appellant's motive, the Court of Appeals adopted the following reasoning of the trial court.

*The Court does not find it necessary to decide motives.* If the hospital is a public institution, and the information sought does not come under one of the exceptions, the information sought should be made available.

*The Court does not find that invidious or improper motives,* if any, *can bring information otherwise revealable* under the Act *into the classification* of Art. 76A 3.(f) *where disclosure would do "substantial injury to the public interest."*

276 Md. at 227–28, 345 A.2d 855 (emphasis supplied). See also *City of Baltimore v. Burke,* 67 Md.App. 147, 154–55, 506 A.2d 683 (1986).

A person in interest seeking to inspect an investigatory file pursuant to § 10–618(f)(2) is under no obligation whatsoever to offer a socially acceptable reason for why he seeks the information or, indeed, to offer any reason at all. Unless the custodian can demonstrate to the court that one of the seven very specific reasons for an exemption applies, the person in interest is entitled to the information, with no questions asked.

We find persuasive 81 Opinions of the Attorney General (January 31, 1996).[7] That Opinion was in response to an inquiry from the Howard County State's Attorney's Office concerning the obligation to satisfy numerous MPIA requests, "mostly from convicted defendants seeking disclosure of the prosecutorial files maintained in their cases." The Opinion stated:

> *The PIA would require you to grant these requests unless you identify a basis in the law that authorizes you not to do so*-for example, that disclosure would interfere with a law enforcement proceeding.

(Emphasis supplied).

The reasoning of the Opinion was, in pertinent part:

> The PIA was enacted to provide the public a broad right of access to records maintained by State and local governments. In furtherance of this purpose, *the PIA's rule of construction is "in favor of permitting inspection* of a public record, with the least cost and least delay *to the person ... [who] requests the inspection."* ... Consistent with the broad right of access granted by the PIA, a requester has a right to judicial review of a custodian's denial of a request to inspect public records. In a judicial

---

7. We recognize, of course, that this Opinion of the Attorney General was not binding authority. It is now, however, as we adopt it as part of the opinion of this Court.

proceeding arising out of such a denial, the custodian bears the burden of establishing a valid basis for the denial.

. . . .

*[T]he PIA effectively grants a special right of access to a "person in interest"-that is, the subject of an investigatory file.* A person in interest may be denied the right to inspect pertinent investigatory and prosecutorial files of a State's Attorney only to the extent that inspection would: [cause one of the seven adverse effects enumerated in § 10–618(f)(2)]

*Absent one of these enumerated reasons or another PIA exemption, the custodian must permit inspection of the investigatory or prosecutorial file.* . . .

Therefore, *a State's Attorney may not have a blanket rule of denying PIA requests from inmates seeking documents in prosecutorial files.*

(Emphasis supplied).

▆▆▆ The Opinion concluded:

In summary, it is our opinion that *a convicted defendant may obtain access to the prosecutorial file concerning the defendant unless one or more of the factors specified in SG § 10–618(f)(2) exists or some other PIA exemption applies.*

(Emphasis supplied).

Criminal defendants, of course, are classic examples of persons in interest within the contemplation of § 10–618(f)(2). The subsection was added to the law in 1978 with them in mind. The subsection, counterintuitive as it may seem to some, gives them the benefit of favored status under the MPIA. It is, moreover, highly unlikely that requests by criminals to inspect their investigatory files would ever be for the abstract purpose of sociological, genealogical, or journalistic research or even out of idle curiosity. It goes without saying that these particular persons in interest are almost always hoping, desperately, to dig up something in the file that will help them to get out of jail. That does not render them, however, MPIA pariahs.

The General Assembly was not unaware of this characteristic when it gave them the benefit of § 10–618(f)(2). With respect to access to an investigatory file, it is precisely one's status as the suspected criminal on whom the investigation focused that moves that suspect from the less benign confines of § 10–618(f)(1) into the more welcoming embrace of § 10–618(f)(2). This, then, is not simply a § 10–618(f) case generally, it is a subsection 10–618(f)(2) case specifically.

### Reasons for a § 10–618(f)(2) Exemption That Were Not Shown

The reason for an applicant's curiosity about a record is not for the courts to judge. The use to which a convicted criminal, such as the appellant, might wish to put the information contained in his investigatory file will not deny him access to that file. Access may be denied only if one of the enumerated reasons for a § 10–618(f)(2) exemption has been specifically shown. There are seven such possible reasons.

It is immediately apparent that there was no required showing by the custodian with respect to six of those reasons. There has been no suggestion that disclosure of the file would "deprive another person of a right to a fair trial or an impartial adjudication" under (f)(2)(ii). There was no showing that disclosure would "constitute an unwarranted invasion of personal privacy" under (f)(2)(iii). It was not argued that disclosure would "disclose the identity of a confidential source" under (f)(2)(iv) or "disclose an investigative technique or procedure" under (f)(2)(v). The case against the appellant had been closed for seven years and it was not even intimated that disclosure would "prejudice an investigation" under (f)(2)(vi). Nor was there so much as an allusion to a risk that disclosure might "endanger the life or physical safety of an individual" under (f)(2)(vii).

The appellee, to justify the denial of disclosure in this case, is left finally with a single possibility:

(2) *A custodian may deny inspection* by a person in interest *only to the extent that the inspection would:*

(i) *interfere with a valid and proper law enforcement proceeding.*

(Emphasis supplied).

### Section 10–618(f)(2) Inapplicable Versus
### § 10–618(f)(2)(i) Satisfied

■ The issue before us has now been properly narrowed. It is important that it also be properly conceptualized. The appellee argues that the MPIA does not cover an investigatory file in a pending criminal case. That is definitely not so. The MPIA covers an investigatory file—in a pending criminal case and at all other times. When the applicant for inspection is a person in interest, moreover, subsection 10–618(f)(2) covers an investigatory file—in a pending criminal case and at all other times.

■ Deferring for the moment the issue of what is "a pending criminal case," the pendency of a criminal case does not relieve the custodian of the burden of showing that disclosure would "interfere with a . . . law enforcement proceeding." It simply alters, and eases, the manner in which the custodian goes about showing that interference. It permits him, when a criminal case is pending, to show that disclosure would constitute interference generically, rather than having to show particularized interference on an *ad hoc,* case-by-case basis.

The precise question, therefore, is not **WHETHER** the reason for a § 10–618(f)(2) exemption must be shown, even with respect to a pending criminal case. It must. The question, rather, is **HOW** may it be shown.

In this case, there was no particularized *ad hoc* showing that an inspection of the investigatory file would "interfere with a valid and proper law enforcement proceeding." The appellee must cling, therefore, to the hope that some special circumstance relieved it of having to make an *ad hoc* showing and permitted it to rely upon a generic showing that, in the context of a pending criminal case, the disclosure of the file would automatically "interfere with a valid and proper law

enforcement proceeding." Conceptually, if the appellee in this case is to prevail, it will be not because § 10–618(f)(2) is inapplicable, but because § 10–618(f)(2)(i) had been, generically, satisfied.

### Generic Justification Versus *Ad Hoc* Justification For Non–Disclosure in a Pending Criminal Case: A Trilogy of Opinions

As far as Maryland is concerned, the notion that the premature disclosure of the contents of an investigatory file would represent, *per se,* an interference with a law enforcement proceeding is a product of three cases. In 1978, the Supreme Court handed down its opinion in *National Labor Relations Board v. Robbins Tire and Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). The case dealt with an exemption from mandatory FOIA disclosure during the pendency of a law enforcement proceeding. In 1982, the Court of Special Appeals, in *Faulk v. State's Attorney for Harford County,* 52 Md.App. 616, 451 A.2d 936 (1982), considered the implications of *NLRB v. Robbins* for a requested MPIA disclosure. We held that the pendency of a criminal case constituted a generic justification for non-disclosure for the reason that disclosure at such a time would be a presumptive interference "with a valid and proper law enforcement proceeding." In 1984, the Court of Appeals affirmed that decision with its opinion in *Faulk v. State's Attorney for Harford County,* 299 Md. 493, 474 A.2d 880 (1984). It is primarily the Court of Appeals's decision in *Faulk* on which the appellee in this case relies.

As we mark the progress of this idea from the Supreme Court through the Court of Special Appeals to the Court of Appeals, it will be convenient to analyze, simultaneously, both 1) the emergence of the idea of generic justification and 2) the temporal limits on the availability of generic justification. As the appellee correctly argues, there is such a generic justification sometimes available. Unfortunately for the appellee, this case is not one of those times.

## A. *NLRB v. Robbins*

In the Supreme Court case, the NLRB had filed a number of complaints against the Robbins Company charging unfair labor practices. One week before the scheduled hearing on those complaints, Robbins invoked the provisions of the FOIA as it requested the NLRB to "make available for inspection and copying . . . copies of all potential witnesses' statements collected during the Board's investigation." 437 U.S. at 216, 98 S.Ct. 2311. The custodian of the records dug in his heels and invoked Exemption 7A of the FOIA, even as the appellee here invokes the indistinguishable provisions of § 10–618(f)(2)(i).

> He placed particular reliance on Exemption 7(A), which provides that *disclosure is not required* of "matters that are investigatory records compiled for law enforcement purposes, *but only to the extent that the production of such records would . . . interfere with enforcement proceedings.*"

437 U.S. at 217, 98 S.Ct. 2311 (emphasis supplied).

The critical issue in *NLRB v. Robbins* was whether the NLRB had shown that disclosure would, indeed, interfere with law enforcement proceedings. The NLRB there, as the appellee here, had failed to make any particularized showing that disclosure would actually interfere with law enforcement proceedings. It was for that reason that the NLRB had not prevailed before either the United States District Court or the Fifth Circuit Court of Appeals. 563 F.2d 724 (1977). The Supreme Court summarized the holding of the District Court.

> The District Court held that, *since the Board did not claim that release* of the documents at issue *would pose any* unique or unusual *danger of interference* with this particular enforcement proceedings, *Exemption 7(A) did not apply.*

437 U.S. at 217, 98 S.Ct. 2311 (emphasis supplied). The Court summarized the similar holding of the 5th Circuit.

> [The 5th Circuit] held that *the Board had failed to sustain its burden* of demonstrating the availability of Exemption 7(a), *because it had "introduced [no] evidence* tending to

show that this kind of [witness] intimidation" was in fact likely to occur in this particular case.

437 U.S. at 218–19, 98 S.Ct. 2311 (emphasis supplied).

Granting certiorari to resolve a conflict among the circuit courts, the Supreme Court first noted that, in contrast to the holding of the 5th Circuit, several circuits, including the 2nd Circuit in *Title Guarantee Co. v. NLRB*, 534 F.2d 484, 491 (1976), had permitted a generic showing of interference with law enforcement proceedings.

*Rejecting* the employer's contention that the Board must make *a particularized showing* of likely interference *in each individual case, the Second Circuit found that such interference would "necessarily" result* from the production of the statements.

437 U.S. at 220, 98 S.Ct. 2311 (emphasis supplied).

In choosing between the requirement of an *ad hoc* showing versus the permissibility of a generic showing, the Supreme Court noted, as we have done, that the issue is not **WHETHER** a showing must be made, but **HOW** it shall be made.

[T]he mere fact that *the burden* is *on the Government* to justify nondisclosure *does not*, in our view, *aid the inquiry as to what kind of burden* the Government bears.

437 U.S. at 224, 98 S.Ct. 2311 (emphasis supplied).

In examining the reasons for the exemption from disclosure, the Supreme Court emphasized the temporal elements 1) of not harming a "case in court" before the case gets to court and 2) of not permitting "earlier access" to investigatory files than the applicable discovery rules would allow.

In originally enacting Exemption 7, Congress recognized that *law enforcement agencies had legitimate needs* to keep certain records confidential, *lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their case.* Foremost *among the purposes* of this Exemption *was to prevent "harm [to] the Government's case in court,"* by *not allowing litigants*

*"earlier or greater access" to* agency *investigatory files than they would otherwise have.*

437 U.S. at 224–25, 98 S.Ct. 2311 (emphasis supplied).

The Court went on to stress that the exemption's purpose was to protect against disclosure not permanently but **PRIOR TO** the scheduled hearing.

[T]he 1966 Act was expressly intended to *protect against* the mandatory *disclosure* through FOIA of witnesses' statements *prior to an unfair labor practice proceeding.*

437 U.S. at 226, 98 S.Ct. 2311 (emphasis supplied). The Supreme Court quoted with approval from circuit court cases holding that information was "exempt from disclosure ... *prior to the hearing*" and that "the exemption was necessary in order *to prevent premature disclosure* of an investigation so that the Board can present its strongest case in court." 437 U.S. at 226, 98 S.Ct. 2311 (emphasis supplied).

The next section of the *NLRB v. Robbins* opinion, explaining the Congressional intent behind the 1974 amendment to the FOIA's Exemption 7, which amendment presaged the 1978 Maryland amendment to the MPIA which added what is now § 10–618(f)(2) to the law, shreds the appellee's argument in this case. When the MPIA hearing took place in this case, the criminal conviction of the appellant had been history for almost seven years. The appellee nonetheless argues that an investigatory file is forever shielded from MPIA disclosure. It argues, at the very least, that the possibility of a future post-conviction procedure petition somehow serves to reactivate the informational shield.

Those precise arguments, however, had been espoused by four decisions of the District of Columbia Circuit Court of Appeals in 1973 and 1974. The Supreme Court pointed out that the 1974 amendment to the FOIA resulted from a strong Congressional reaction against those decisions, as the Congress made certain that the FOIA should not again be interpreted as those decisions had done. The first target of attack was *Weisberg v. United States Department of Justice*, 160

U.S.App. D.C. 71, 489 F.2d 1195 (1973). The Supreme Court summarized what that now rejected interpretation had been.

Although the court acknowledged that *no enforcement proceedings were then pending or contemplated,* it held that *all the agency need show to be entitled to withhold under Exemption 7 was that the records were investigatory in nature and had been compiled for law enforcement purposes.*

437 U.S. at 228, 98 S.Ct. 2311 (emphasis supplied).

The Supreme Court summarized the second rejected interpretation.

The court adhered to this holding in *Aspin v. Department of Defense,* 160 U.S.App.D.C. 231, 237, 491 F.2d 24, 30 (1973), stating that *even "after the termination of investigation and enforcement proceedings," material found in an investigatory file is entirely exempt.*

*Id.* (emphasis supplied).

The third rejected interpretation still finds eerie echoes in the appellee's position in the case now before us.

In *Ditlow v. Brinegar,* 161 U.S. App DC 154, 494 F.2d 1073 (1974), the court indicated that, after *Weisberg, the only question before it was whether the requested material was found in an investigatory file* compiled for law enforcement purposes.

*Id.* (emphasis supplied).

The Supreme Court concluded its review of the discredited positions that had led to the FOIA's 1974 amendment.

Finally, in *Center for National Policy Review on Race and Urban Issues v. Weinberger,* 163 U.S. App DC 368, 502 F.2d 370 (1974), the court held that *the investigatory file exemption was available even if an enforcement proceeding were neither imminent nor likely either at the time of the compilation or at the time disclosure was sought. These four cases,* in Senator Hart's view, *erected a "stone wall"*

> *against public access to any material in an investigatory file.*

437 U.S. at 228–29, 98 S.Ct. 2311 (emphasis supplied). All four of those interpretations, granting plenary protection to investigatory files, were roundly repudiated, first by the Congress and then by *NLRB v. Robbins.*

Turning to the affirmative effects of the 1974 amendment, the Supreme Court stressed that its purpose was to "rectify [the] erroneous judicial interpretations and clarify Congress's original intent." 437 U.S. at 229, 98 S.Ct. 2311. The 1974 FOIA amendment, just as our own 1978 MPIA amendment, denied blanket protection to an investigatory file in perpetuity.

> *[I]t would* explicitly enumerate the purposes and objectives of the Exemption, and thus *require reviewing courts to "loo[k] to the reasons" for allowing withholding of investigatory files* before making their decisions. *The "woode[n] and mechanica[l]" approach taken by the D.C. Circuit and disapproved by Congress would thereby be eliminated.* ... [T]he Senate amendment was needed *to address "recent court decisions" that had applied the exemptions to investigatory files "even if they ha[d] long since lost any requirement for secrecy."*
>
> ... [T]he thrust of congressional concern in its amendment of Exemption 7 was to make clear that *the Exemption did not endlessly protect material simply because it was in an investigatory file.*

437 U.S. at 230, 98 S.Ct. 2311 (emphasis supplied).

In interpreting the amendment, the Court also quoted with approval from the proposal submitted by the Administrative Law Division of the American Bar Association, as it said, with references to an exemption for an investigatory file and with specific reference to what is and is not interference with law enforcement proceedings:

> "[W]ith passage of time, ... *when the investigation is all over* and the purpose and point of it has expired, *it would*

*no longer be an interference* with enforcement proceedings
and *there ought to be disclosure."*

437 U.S. at 232, 98 S.Ct. 2311 (emphasis supplied).

The Supreme Court was firm that there is no blanket
exemption from disclosure for investigatory files and that
there must be a showing, before exemption is permitted, that
the disclosure would interfere with law enforcement proceed-
ings.

What Congress clearly did have in mind was that Exemp-
tion 7 permit nondisclosure only where the Government
"specif[ies]" that one of the six enumerated harms is pres-
ent and the court, reviewing the question de novo, agrees
that one of those six "reasons" for nondisclosure applies.
Thus, *where an agency fails to "demonstrat[e] that the
documents [sought] relate to any on-going investigation or
would jeopardize any future law enforcement proceedings,"
Exemption 7(a) would not provide protection* to the agen-
cy's decision.

437 U.S. at 235, 98 S.Ct. 2311 (emphasis supplied).

■ While the justification for an exemption based on
interference with law enforcement proceedings cannot be es-
tablished generically in most cases, it may be thus established,
however, when a case is actually pending.

While *the Court of Appeals was correct that* the amendment
of *Exemption 7 was designed to eliminate "blanket exemp-
tions" for* Government *records simply because they were
found in investigatory files* compiled for law enforcement
purposes, we think *it erred in concluding that no generic
determinations of likely interference can ever be made.* We
conclude that Congress did not intend to prevent the federal
courts from determining that, with respect to particular
kinds of enforcement proceedings, *disclosure of particular
kinds of investigatory records while a case is pending
would generally "interfere with enforcement proceedings."*

437 U.S. at 236, 98 S.Ct. 2311 (emphasis supplied).

In the case of the NLRB hearing then before it, the
Supreme Court recognized the validity of a generic justifica-
tion, but also recognized its finite shelf life.

*[W]itness statements* in pending unfair labor practice proceedings *are exempt* from FOIA disclosure *at least until completion of the Board's hearing.*

*Id.* (emphasis supplied).

 What the exemption based on interference with law enforcement proceedings seeks to prevent is disclosure prior to the completion of the proceeding.

The tenor of this description of the statutory language clearly suggests that the release of information in investigatory files *prior to the completion of an actual, contemplated enforcement proceeding* was precisely the kind of interference that Congress continued to want to protect against.

437 U.S. at 232, 98 S.Ct. 2311 (emphasis supplied).

When a prosecution is actually pending, there is, in effect, a short form available to a custodian for showing that disclosure would likely interfere with such a proceeding. The option of utilizing that short form of justification, however, has a very definite expiration date. It expires when the law enforcement proceeding it was designed to protect expires.

In pointing out why a broad generic justification for nondisclosure rather than an *ad hoc* showing of probable interference on a case-by-case basis is advisable when a law enforcement proceeding is actually pending, the Supreme Court listed two dangers posed by premature disclosure. The first is a significant disruption of the discovery procedures designed to cover the pretrial and trial phases of a case.

Historically, the NLRB has provided little prehearing discovery in unfair labor practice proceedings and has relied principally on statements such as those sought here to prove its case. . . . A profound alteration in the Board's trial strategy in unfair labor practice cases would thus be effectuated if the Board were required, in *every case in which witnesses' statements were sought under FOIA prior to an unfair labor practice proceeding,* to make a particularized

showing that release of these statements would interfere with the proceeding.

437 U.S. at 236–37, 98 S.Ct. 2311 (emphasis supplied).

 The second danger is that of undue trial delay. Whereas a denial of discovery is not appealable until after a trial has been completed, a denial of disclosure under the FOIA (or under the MPIA) generally is immediately appealable. The potential for interfering with (by delaying) the law enforcement proceeding is self-evident.

Unlike ordinary discovery contests, where rulings are generally not appealable until the conclusion of the proceedings, *an agency's denial of a FOIA request is immediately reviewable in the district court, and the district court's decision can then be reviewed in the court of appeals. The potential for delay* and for restructuring of the NLRB's routine adjudications of unfair labor practice charges from requests like respondent's *is thus not insubstantial.*

437 U.S. at 238, 98 S.Ct. 2311 (emphasis supplied).

 When a case is pending, a premature disclosure of information, beyond that allowed by the discovery rules, is *per se* an interference with the proceeding.

[T]he dangers posed by *premature release of the statements* sought here would involve *precisely the kind of "interference* with enforcement proceedings" *that Exemption 7(a) was designed to avoid.*

437 U.S. at 239, 98 S.Ct. 2311 (emphasis supplied).

As *NLRB v. Robbins* concluded its analysis, the opinion expressly articulated that the kind of disclosure that the generic justification for non-disclosure was designed to guard against was not disclosure generally, but prehearing disclosure specifically.

In short, *prehearing disclosure* of witnesses' statements would involve the kind of harm that Congress believed would constitute an "interference" with NLRB enforcement proceedings: that of *giving a party litigant earlier and*

*greater access* to the Board's case *than he would otherwise have.*

437 U.S. at 241, 98 S.Ct. 2311 (emphasis supplied).

The Supreme Court's final word on the subject emphasized what a narrow window of enhanced non-disclosure was being contemplated. The relaxed burden on the custodian to justify non-disclosure was only being made available until the prosecution had "presented its case in court." FOIA disclosure was not being denied. It was only being deferred.

Since we are dealing here with the narrow question whether witnesses' statements must be released five days prior to an unfair labor practice hearing, *we cannot see how FOIA's purposes would be defeated by deferring disclosure until after the Government has "presented its case in court."*

437 U.S. at 242, 98 S.Ct. 2311 (emphasis supplied).

### B. *Faulk v. State's Attorney:* COSA

Four years after *NLRB v. Robbins* was filed, a similar issue arrived in Maryland as one of first impression. Curley Faulk was actually awaiting trial in Harford County on two separate charges of burglary. Under the Maryland Rule covering pretrial discovery, he sought copies of the police reports in his case. Such reports were not covered by the discovery rules and the request was denied. It was then that Faulk demanded the production of the records under the MPIA. The State's Attorney denied disclosure and the trial judge granted summary judgment in favor of the State's Attorney's Office.

On appeal, the framing of the issue by this Court in *Faulk v. State's Attorney,* 52 Md.App. at 618, 451 A.2d 936, made it clear that we were dealing with a request for an investigatory file by a person in interest that was being resisted by the custodian on the ground that disclosure would "interfere with valid and proper law enforcement proceedings" pursuant to what is now § 10–618(f)(2)(i).

Section 3(a) of Article 76A provides generally that the custodian of any public records shall allow any person the right of inspection of such records. This general access is,

however, limited by, *inter alia,* the provisions of subsection (b). That subsection covers five broad categories of records that are exempt from general public access. *The first of those* five exempt *categories* is the one that *concerns us in this case. It deals with the* "*records of investigations* conducted by . . . any sheriff, county attorney, city attorney, State's attorney, the attorney General, police department, or any investigatory files compiled for any other law-enforcement, judicial, correctional, or prosecution purposes. . . . " The appellant does not contest the fact that *the records in issue in this case were investigatory files* compiled by the Sheriff's Office *for use in pending criminal cases.* What is at issue, however, as we narrow the focus in upon an exception to that exemption is the meaning of the following words:

> " . . . but *the right of a person in interest* to inspect the records *may be denied only to the extent that the production* of them *would* (a) *interfere with valid and proper law-enforcement proceedings.* "

(Emphasis supplied).

The State's Attorney's Office had made no particularized showing of precisely how disclosure would interfere with a law enforcement proceeding. It relied blanketly on the pendency of the criminal prosecution to establish such interference. The issue before this Court was squarely one of choosing between a required *ad hoc* justification and a permissible generic justification for non-disclosure in the special circumstance wherein a criminal case is then pending.

The State's Attorney maintained and *Judge Cameron ruled that the very pendency of the criminal case makes any disclosure* broader than that contemplated by the available rules of discovery *a per se interference with a law enforcement proceeding. The pendency of the case,* therefore, *properly triggers the exemption from disclosure. The appellant,* on the other hand, *reads the statutory language to compel that there be an actual showing as to how the disclosure would interfere with a pending proceeding on a case-by-case basis. There was no actual showing made in*

*this case of anything beyond the fact that criminal charges were pending.*

52 Md.App. at 619, 451 A.2d 936 (emphasis supplied).

At the outset of our analysis, we announced our intention to follow the lead of the Supreme Court in *NLRB v. Robbins.*

In interpreting the Maryland Public Information Act, we are fortunate in having available the Supreme Court's interpretation of counterpart provisions of the federal Freedom of Information Act. Its provisions exempting "investigatory records compiled for law enforcement purposes" from the general provisions establishing public access parallel almost verbatim the Maryland provisions. In interpreting the Maryland act, *we have already deemed it appropriate to look to the Supreme Court's interpretation of the federal act as highly persuasive authority. Equitable Trust Company v. Maryland Commission on Human Relations,* 42 Md.App. 53, 75–76, 399 A.2d 908, *rev'd on other grounds,* 287 Md. 80, 411 A.2d 86. In dealing with the very issue before us, *the Supreme Court in National Labor Relations Board v. Robbins Tire and Rubber Company, supra, rendered a thoughtful and scholarly interpretation* dealing with the breadth of the exemption. *We find it highly persuasive and we are, indeed, persuaded.*

The Supreme Court was dealing with a nondisclosure provision for investigatory records and with an exemption from that nondisclosure that tracks precisely the Maryland provisions now before us.

52 Md.App. at 619, 451 A.2d 936 (emphasis supplied).

We agreed with the Supreme Court that broad access was ordinarily required in order "to keep investigatory files from remaining forever sealed," and we quoted with approval the position taken by the American Bar Association before the Supreme Court.

[The Supreme Court] held that *the right of access* of a party in interest to certain investigatory information unless the custodian could show an interference with law enforcement proceedings, *was intended to keep investigatory files from*

*remaining forever sealed long after any reason for confidentiality had ceased to exist.* It found legislative intent to have been expressed by a proposal submitted during the hearings by the Administrative Law Division of the American Bar Association, 2 Senate Hearings 158:

> "[W]ith passage of time, . . . *when the investigation is all over* and the purpose and point of it has expired, it would no longer be an interference with enforcement proceedings and *there ought to be disclosure.*"

52 Md.App. at 621, 451 A.2d 936 (emphasis supplied).

We further agreed with the Supreme Court that the premature disclosure of investigatory files would give rise to the twin dangers of 1) expanding discovery beyond that contemplated for the governance of criminal trials, and 2) potentially delaying the resolution of the criminal case. In permitting a generic justification for the non-disclosure of an investigatory file during the actual pendency of a criminal case, we followed completely the lead of *NLRB v. Robbins.*

> We attribute to the Maryland General Assembly with respect to the Public Information Act the same intent that *National Labor Relations Board v. Robbins, supra,* attributed to the National Congress with respect to the Freedom of Information Act.

52 Md.App. at 623, 451 A.2d 936.

■ The right to rely on the generic justification for non-disclosure has a limited shelf life. It may be relied upon to show an interference with a valid law enforcement proceeding only in those situations wherein a law enforcement proceeding is then pending.

### C. *Faulk v. State's Attorney:* COA

On certiorari, the Court of Appeals, with its opinion in *Faulk v. State's Attorney for Harford County,* 299 Md. 493, 474 A.2d 880, affirmed the Court of Special Appeals. It framed the question before it precisely as that of what kind of a showing of "interference" needed to be made to justify non-

disclosure in the special circumstances of a pending criminal proceeding.

> [T]he question presented is *whether*, in order to deny access to investigatory police reports to a defendant in a pending criminal proceeding, *the State must present particularized evidence showing that the disclosure of such reports would interfere with the pending criminal proceedings or whether* under such circumstances *a generic determination of interference is appropriate.*

299 Md. at 495, 474 A.2d 880 (emphasis supplied). The issue was exclusively one of the modality by which a custodian could justify non-disclosure in a pending criminal case.

> Here *Faulk contends that*, in order to deny access to investigatory police reports to a defendant in a pending criminal proceeding, *the State must present particularized evidence* showing that the disclosure of such reports would interfere with the pending criminal proceeding. *The State contends that a particularized case-by-case factual showing of interference is not required, and that a generic determination of interference can be made* when a defendant *in a pending criminal proceeding* seeks access to investigatory police reports *relating to pending criminal proceeding.*

299 Md. at 498, 474 A.2d 880 (emphasis supplied).

Just as the Court of Special Appeals had done, the Court of Appeals, 299 Md. at 506, 474 A.2d 880, determined that federal interpretations of the FOIA would be highly persuasive authority in interpreting corresponding provisions of the MPIA.

> *Where the purpose and language* of a federal statute *are substantially the same* as that of a later state statute, *interpretations of the federal statute are ordinarily persuasive.* The purpose of the Maryland Public Information Act, enacted by Chapter 698 of the Laws of 1970, is virtually identical to that of the FOIA, enacted in 1966.

(Emphasis supplied).

The Court of Appeals then closely examined, on a line by line basis, the Supreme Court decision in *NLRB v. Robbins* and concluded that the short cut to the justification of non-

disclosure was only available when a criminal case was actually pending.

> *[T]he exemption did not sanction nondisclosure* of investigatory records, either *when* there was no initial reason for confidentiality because *no enforcement proceeding was contemplated or pending, or after* any reason for confidentiality had ceased to exist because *an enforcement proceeding had been concluded.* Rather, *the purpose* of Exemption 7(A) *was to permit nondisclosure* of investigatory records only when there was a need for confidentiality *because of a pending law-enforcement proceeding.*

299 Md. at 501–02, 474 A.2d 880 (emphasis supplied).

Following the lead of the Supreme Court, the Court of Appeals first recognized that, under certain circumstances, a generic determination of interference could be made. Judge Davidson observed, 299 Md. at 502–03, 474 A.2d 880:

> The Supreme Court noted that *there was nothing* in the language of Exemption 7(A) or in its legislative history *to indicate that Congress intended that generic determinations of interference could never be made.*
>
> . . . .
>
> ... [U]nder Exemption 7(A) *a generic determination would be appropriate* when the circumstances were such that disclosure of the requested materials necessarily would interfere with enforcement proceedings.

(Emphasis supplied). By parity of reasoning, the Court of Appeals found that there was nothing in the legislative history of § 10–618(f)(2)(i) to preclude a generic determination of interference.

> *There is nothing in the language or the legislative history* of [what is now § 10–618(f)(2)(i)] to indicate that the General Assembly *intended to require a case-by-case showing* that disclosure would reveal the State's case prematurely, result in delay or otherwise create a demonstrable interference with the particular case, *and that generic determinations of interference could never be made.* Thus, we conclude that *the General Assembly did not intend to preclude generic*

*determinations* of interference when the circumstances were such that disclosure of the requested materials necessarily "would interfere" with law-enforcement proceedings. 299 Md. at 508, 474 A.2d 880 (emphasis supplied).

The Court of Appeals reaffirmed that the exemption from "the otherwise mandatory disclosure requirements" did not apply generally to "investigatory records compiled for law-enforcement purpose," but did so "only to the extent that the production of them would interfere with valid and proper law-enforcement proceedings." The burden of justifying non-disclosure remained, moreover, unequivocally placed on the custodian.

> In light of the historical development of [§ 10–618(f)] we are persuaded that *the purpose of the amendment was to make clear that [§ 10–618(f)] did not protect material simply because it was characterized as an investigatory record* of a statutorily enumerated agency and *did not sanction nondisclosure* of investigatory records, either *when there was* no initial reason for confidentiality because *no enforcement proceeding* was contemplated or *pending, or after any reason for confidentiality had ceased to exist because an enforcement proceeding had been concluded.* Indeed, *the purpose* of [§ 10–618(f)] *was to permit nondisclosure* of investigatory records compiled for law-enforcement purposes *only when there was a need for confidentiality because of a contemplated or pending law-enforcement proceeding.*

299 Md. at 508, 474 A.2d 880 (emphasis supplied).

All that remained to be determined was what that certain circumstance would be that would permit the generic determination. That special circumstance is unquestionably the actual pendency of a criminal proceeding.

> *[T]he rationale* underlying the Supreme Court's conclusion in *Robbins that* under Exemption 7(A) *a generic determination was appropriate* because disclosure of witnesses' statements *during the pendency of an unfair labor practice proceeding* necessarily would "interfere with enforcement

proceedings" *is applicable here in determining whether* under [§ 10–618(f)(2)(i)] the *disclosure* of investigatory police reports *during the pendency of a criminal proceeding necessarily would "interfere with valid and proper law-enforcement proceedings." The same special dangers* that premature disclosure would present in the context of an unfair labor practice proceeding *would also be present in the context of a criminal proceeding.*

299 Md. at 508–09, 474 A.2d 880 (emphasis supplied).

Just as the Supreme Court and the Court of Special Appeals had done, the Court of Appeals recognized the twin dangers of premature disclosure during the pendency of a criminal case to be 1) a disruption of the ordinary discovery procedures and 2) the risk of inordinate delay posed by appeals of MPIA rulings. The analysis stressed the fact that the information required to be disclosed to a criminal defendant in a pending criminal case is controlled by the discovery rules. The exploitation of the MPIA to outflank the built-in limitations on discovery was considered to be, *ipso facto,* an "interfer[ence] with a valid and proper law enforcement proceeding."

[T]he utilization of the Maryland Public Information Act *to obtain disclosure* of investigatory police reports *not otherwise mandated* by [the discovery rules] *necessarily would "interfere with valid and proper law-enforcement proceedings."*

We are persuaded that the *disclosure of investigatory police reports to a defendant in a pending criminal proceeding* would substantially alter the substantive criminal discovery rules and cause substantial delays in the adjudication of a criminal proceeding. Consequently, *such disclosure necessarily would "interfere with valid and proper law-enforcement proceedings."* We are further persuaded that *the Maryland Public Information Act was not intended to be a device to enlarge the scope of discovery beyond*

*that provided by the Maryland Rules* or to delay ongoing litigation.

299 Md. at 510, 474 A.2d 880 (emphasis supplied).

The Court of Appeals also recognized the other automatic interference posed by delay.

Ordinarily, discovery rulings are not appealable until there is a final judgment. In contrast, *a public official's denial of a Maryland Public Information Act request is immediately reviewable in a circuit court, and the circuit court's decision can then be reviewed on appeal.* Consequently, *the utilization of the Maryland Public Information Act* to obtain disclosure of investigatory police reports not otherwise mandated *necessarily would "interfere with valid and proper law-enforcement proceedings."*

299 Md. at 509–10, 474 A.2d 880 (emphasis supplied).

Those dangers of 1) unduly expanded discovery and 2) inordinate delay do not exist when there is no pending criminal case. Judge Davidson's opinion carefully qualified every mention of permitted non-disclosure or of the generic justification for non-disclosure with the temporal adverbial limitation "in a pending criminal case."

In our view, the disclosure of investigatory police reports to a defendant *in a pending criminal proceeding* would substantially alter the substantive criminal discovery rules.... [I]t would give a defendant *in a pending criminal proceeding* earlier or greater access to the State's case than would otherwise be available.

Moreover, the utilization of the Maryland Public Information Act to obtain disclosure of information for use *in a pending criminal proceeding* creates a substantial likelihood of delay in the adjudication of that criminal proceeding.

299 Md. at 509, 474 A.2d 880 (emphasis supplied).

The *Faulk* opinion, moreover, clearly contemplated that the permitted non-disclosure was not intended to be a permanent ban, but only a temporary postponement. It figured that no harm would be done by temporarily deferring the disclosure until the criminal prosecution had been concluded. The issue

was only one of timing. Once the criminal case has been terminated, disclosure will once again become the order of the day. The balancing of competing goals produces not a final resolution of disclosure denied, but only a compromise of disclosure deferred.

[W]e are not persuaded that the purpose of the Maryland Public Information Act would be defeated by *deferring the disclosure* of investigatory police reports *until the termination of a criminal proceeding*. Under these circumstances, we conclude that the strong presumption in favor of disclosure under the Maryland Public Information Act is outweighed by the likelihood that the disclosure of investigatory police reports to a defendant *in a pending criminal proceeding* would disturb the existing balance of relations in criminal proceedings.

299 Md. at 510–11, 474 A.2d 880 (emphasis supplied).

As its final holding made eminently clear, the Court of Appeals would not even allow the notion of a generic determination of interference out in public, except when closely chaperoned by its limiting qualifier of "in a pending criminal proceeding." Without the latter, the former does not exist.

[T]he State is not required to make a particularized showing that the disclosure of investigatory police reports compiled for law-enforcement purposes to a defendant *in a pending criminal proceeding* would interfere with *that pending criminal proceeding*. Rather, a generic determination of interference can be made whenever a defendant *in a pending criminal proceeding* seeks access to investigatory police reports relating to *that pending criminal proceeding*. In short, the Maryland Public Information Act does not require the disclosure of investigatory police reports compiled for law-enforcement purposes to a defendant *in a pending criminal proceeding*.

299 Md. at 511, 474 A.2d 880 (emphasis supplied).

### The Caselaw Post-*Faulk*

In *Fioretti v. Board of Dental Examiners*, 351 Md. at 88 n. 14, 716 A.2d 258, Judge Cathell emphatically limited *Faulk's*

permissible use of the generic showing of interference to the very case for which a defendant was then being tried.

The distinction in *Faulk* was expressly qualified to apply when a criminal defendant seeks investigatory *files relating to the crime for which he is being tried. Faulk goes no further.*

(Emphasis supplied). Judge Cathell was also careful to pin down the Supreme Court. *"Robbins Tire & Rubber* concerned 'actual, contemplated enforcement proceedings.' " 351 Md. at 90 n. 15, 716 A.2d 258.

In *Fioretti,* the Court of Appeals was dealing with § 10–618(f)(2)(vi), prejudice to an investigation, rather than § 10–618(f)(2)(i), interference with a valid and proper law enforcement proceeding. As to the investigation being urged upon it by the Dental Board as its reason for denying MPIA disclosure, the Court of Appeals noted that the investigation appeared to be more dormant than pending.

No activity or "investigation," therefore, was conducted with regard to the complaint against appellant in the intervening four months between the date the complaint was taken to the date the circuit court granted appellee's motion to dismiss. Likewise, no investigative activity occurred between the order dismissing appellant's claim under the PIA and the present appeal, some fourteen months later. By all reasonable appearances, *it would seem that no tenable investigation of appellant's alleged misconduct is now taking place or ever took place.*[13]

---

[13] Investigations generally connote action or activity. *A suspension or cessation of activity raises the question of whether any investigation remains underway.*

351 Md. at 84, 716 A.2d 258 (emphasis supplied). In ordering that MPIA disclosure be made, the Court of Appeals concluded, "The legislature clearly did not intend for public agencies to avoid disclosure under the PIA by failing to conclude investigations." 351 Md. at 91, 716 A.2d 258.

*Prince George's County v. Washington Post Co.*, 149 Md. App. 289, 815 A.2d 859 (2003), is at least tangentially significant. It was a case involving investigatory files and an effort by the custodian of them to deny disclosure pursuant to § 10–618(f)(1) with a showing that disclosure would "be contrary to the public interest." While granting the county the right to keep concealed the files on still open investigations, the trial court ordered a disclosure in the case of eight closed files. The county, seeking an open-ended protection for all investigatory files, objected to the distinction between open and closed files.

The County asserts that the court erred in granting the Post access to eight closed CID investigative reports involving "police—involved shootings and in-custody deaths." It contends that those reports are exempt from public disclosure pursuant to the investigations exemption contained in SG § 10–618(f), stating that the release of the investigative reports would be contrary to the public interest. More specifically, *the County contends that the court erred in drawing a distinction between open and closed investigatory files.*

149 Md.App. at 332, 815 A.2d 859 (emphasis supplied).

In agreeing with the *Washington Post* that the "investigations" exemption does not permit a blanket denial of all requests that involve investigatory information, Judge Kenney reasoned that the distinction between open and closed investigations may sometimes be both valid and critically dispositive.

CID investigative reports generally fit the criteria of the investigations exemption and their release in certain instances could be contrary to the public interest.

*The County ... argued that ... the investigations exceptions fails to provide a distinction between open and closed public records. We do not agree.*

Although the County is correct that SG § 10–618(f) does not differentiate between open and closed investigatory records, SG § 10–618(a) might permit that distinction in determining whether inspection "would be contrary to the

public interest." In this instance, *the County failed to demonstrate that disclosure of the eight closed investigatory files would be contrary to the public interest.* ... Therefore, based on the record in this case, we find that *the circuit court did not err in releasing the closed investigatory files.*

149 Md.App. at 333, 815 A.2d 859 (emphasis supplied).

In *Frederick v. Randall,* 154 Md.App. 543, 841 A.2d 10 (2004), an applicant for disclosure pursuant to § 10–618(f)(1) sought information contained in a closed police investigatory file. In holding that information from a closed investigation was not exempt from MPIA disclosure, Judge Salmon wrote for this Court:

In a case like the one *sub judice, where the police investigation is closed and where there is no danger that disclosure will interfere with ongoing law enforcement proceedings, a particularized factual basis for the "public interest" denial must be put forth* in order for the custodian of records to meet his/her burden of proof. Were we to rule otherwise, the custodian would have no meaningful burden to meet, and the requester would be left without any hint as to why the request was denied.

154 Md.App. at 567, 841 A.2d 10 (emphasis supplied).

### There Is No Pending Criminal Case

The criminal prosecution in this case was closed; to wit, it was no longer a "pending criminal case." Indeed, the case had been closed for six and one-half years when the hearing was conducted in the circuit court. There was no longer any danger that premature disclosure under the MPIA might give the appellant an edge at his homicide trial that the ordinary discovery rules would not have entitled him to. Nor was there any longer a danger that an MPIA review by the circuit court or an appeal from that circuit court review to this Court would delay the appellant's trial for murder.

The proceedings against the appellant had certainly once been a "pending criminal case," through his sentencing on

August 15, 1997. Whether the case might be deemed to have been still "pending" during the appeal process is problematic, but that issue is not before us in this case. As of the hearing in September of 2004, the appeal process was already six years in the past.

If the County were correct that the mere possibility that a post-conviction petition might be filed compelled the conclusion that the criminal case was still pending, no criminal case would ever be final and the reasoning of the *Faulk* opinions would have been pointless. As long as a convicted defendant is still serving a sentence or is on parole or probation, the possibility of filing a post-conviction petition or a writ of federal habeas corpus or a writ of coram nobis is always present. *Faulk's* language about there being no harm in temporarily deferring the disclosure "until the termination of a criminal proceeding" would be meaningless. The deferral would be a permanent denial.

Because the criminal case against the appellant was no longer pending, the appellee was not entitled to rely upon a generic showing that disclosure would interfere with a valid law enforcement proceeding under § 10–618(f)(2)(i). The appellee, rather, was required to make a particularized *ad hoc* justification for an exemption from disclosure under any of the seven provisions of § 10–618(f)(2). The appellee failed to carry its burden in that respect and MPIA disclosure, therefore, should have been ordered.

**ORDER OF CIRCUIT COURT DENYING MPIA DISCLOSURE VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS IN CONFORMITY WITH THIS OPINION; COSTS TO BE PAID BY HARFORD COUNTY.**